# EBERLE v. PEOPLE OF THE STATE OF MICHIGAN.

## ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 164.  Argued January 16, 19, 1914.—Decided March 23, 1914.

The validity of a local option law adopted after amendments is not
    affected by the fact that the amendments are subsequently declared
    to be unconstitutional.
Unconstitutional amendments to a constitutional statute are mere
    nullities.
Whether the adoption by a district of a local option statute is affected
    by the subsequent determination by the courts that certain features
    of the act were unconstitutional, is not a Federal question and is for
    the state court to determine.
On writ of error under § 237, Judicial Code, this court cannot inquire

into motives or arguments which influenced electors to vote for or against a measure, or reverse the action of the state court on the ground that the electors voted under misapprehension.

A State may prohibit the sale of liquor absolutely or conditionally; may prohibit the sale as a beverage and permit it for medicinal purposes; may prohibit the sale by merchants and permit it by licensed druggists; and so *held,* that the Michigan Local Option Act of 1889 is not unconstitutional under the equal protection provision of the Fourteenth Amendment on account of discrimination in making certain specific exceptions to the general prohibition.

While a liquor law which prohibited the sale of property existing at the time of its enactment might be confiscatory (*Bartemeyer* v. *Iowa,* 18 Wall. 129), the prohibition of manufacturing liquor after the enactment is not confiscatory even as applied to liquor manufactured for the purpose of giving value to a product existing but unfinished when the act was passed.

Liquor laws are enacted by virtue of the police power to protect the health, morals and welfare of the public; and, while such laws may operate to depreciate the value of property used in the manufacture of liquor, such depreciation is not the taking of property without due process of law as prohibited by the Fourteenth Amendment, and so *held* as to the Michigan Local Option Act of 1889. *Mugler* v. *Kansas,* 123 U. S. 623.

Nothing in the record in this case indicates that the Michigan Local Option Act of 1889 in any way interferes with or is a burden upon interstate commerce.

167 Michigan, 477, affirmed.

THE facts, which involve the constitutionality of the Michigan Local Option Act of 1889 under the commerce, due process and equal protection clauses of the Federal Constitution, are stated in the opinion.

*Mr. Richard Price* for plaintiffs in error:

The Local Option Act is repugnant to the Constitution of the United States.

It is an arbitrary and unfair discrimination against home manufacturers.

The act protects certain traffic.

The invalidity of the wine and cider clause invalidates

entire act.  *Atty. Gen'l* v. *Detroit*, 29 Michigan, 108; *Barte-meyer* v. *Iowa*, 18 Wall. 129, *Boston Beer Co.* v. *Massachusetts*, 97 U. S. 25; Cooley's Const. Limitations (7th ed.), pp. 246, 247, 249; *Eubank* v. *Richmond*, 226 U. S. 137; *Giozza* v. *Tiernan*, 148 U. S. 655; *Kidd* v. *Pearson*, 138 U. S. 1; *Mugler* v. *Kansas*, 123 U. S. 623; *People* v. *Michigan Central R. Co.*, 145 Michigan, 140; *Walling* v. *Michigan*, 116 U. S. 446.  See also *Herman* v. *State*, 8 Indiana, 545; *Allgeyer* v. *Louisiana*, 165 U. S. 578, 589; *Butchers' Union* v. *Crescent City*, 111 U. S. 746, 766.

*Mr. Grant Fellows*, Attorney General of the State of Michigan, for defendant in error:

The Michigan Local Option Act is not unconstitutional under either the commerce clause, the Fourth Amendment or the Fourteenth Amendment.  *Barron* v. *Baltimore*, 7 Pet. 243; *Delamater* v. *South Dakota*, 205 U. S. 93; *Eilenbecker* v. *Plymouth Co.*, 134 U. S. 31; *Feek* v. *Bloomingdale*, 82 Michigan, 393; *Friesner* v. *Charlotte*, 91 Michigan, 504; *Kidd* v. *Pearson*, 128 U. S. 1; *Mugler* v. *Kansas*, 123 U. S. 623; *Lloyds* v. *Dollison*, 194 U. S. 445; *People* v. *Eberle*, 167 Michigan, 477; *Presser* v. *Illinois*, 116 U. S. 252; *Ripley* v. *Texas*, 193 U. S. 504; *Tiernan* v. *Rinker*, 102 U. S. 123.

Mr. Justice Lamar delivered the opinion of the court.

The Michigan Local Option Law of 1889 (Pub. Acts, No. 207), makes it unlawful to manufacture or sell malt, vinous, spirituous or intoxicating liquors in any county where a majority of the electors vote in favor of prohibition.

The provisions of the law, however, do not (§ 1) apply to druggists selling such liquors in compliance with the restrictions imposed upon them by the general laws of this State.  It was also provided (§ 15) that "nothing in this act shall be so construed as to prohibit the sale of wine for sacramental purposes, nor shall anything herein con-

tained prohibit druggists or registered pharmacists from selling or furnishing pure alcohol for medicinal, art, scientific and mechanical purposes;" Public Acts of Michigan for 1889, pp. 287, 293.

By amendments passed in 1899 and 1903 (acts of 1899, p. 280; acts of 1903, p. 229), it was further provided that the act should not be construed to "prohibit the sale of wine or cider made from home grown fruit in quantities of not less than five gallons, nor . . . to prohibit the manufacture of wine or cider, nor . . . to prohibit the sale at wholesale of wine or cider manufactured in said [dry] county to parties who reside outside of said county."

As a result of an election held April 13, 1909, the law became operative in Jackson County on May 1st, 1909. The defendants, who were officers of a brewing company, were charged with having thereafter manufactured beer in that county, in violation of the statute. They moved to quash the Information, upon the ground that the act was void because it interfered with interstate commerce, took property without due process of law, and so discriminated against them and other manufacturers residing in dry counties as to deny them the equal protection of the law. These defenses were overruled. On the trial they offered evidence tending to show that the beer which they had manufactured had not been made for sale, but to be used in causing re-fermentation of 1600 barrels of beer worth $5 a barrel, which was on hand at the date of the election, with a view of making it salable, and thereby save themselves against loss. Under the charge of the court, the jury returned a verdict of guilty. The case was then taken to the Supreme Court of Michigan, which held (167 Michigan, 477) that the amendments of 1899 and 1903 (permitting the manufacture and sale of wine and cider in dry counties), were void as an unlawful discrimination against the products and citizens of other States and

a violation of the equal protection clause of the Constitution. The court, however, sustained the conviction and sentence of defendants upon the ground that the original Local Option Act was constitutional and had not been rendered invalid by the void amendments of 1899 and 1903. The case was then brought here where, in addition to the errors previously assigned, the plaintiffs in error—defendants in the trial court—insisted that the court erred in holding that the act could be valid if the amendments relative to wine and cider were stricken—said provisions "being a part of the Act at the time the Local Option Law was adopted in Jackson County, where defendants reside, and operating, together with the other provisions of the Act, to bring about such adoption."

1. The argument here was principally directed to a discussion of this assignment of error—the defendants contending that the discriminatory wine-and-cider amendments formed an integral part of the law (Endlich on Statutes, §§ 94, 294) which had been submitted to the voters and which, when adopted, it was claimed, was adopted as a whole. It was insisted that the provisions permitting the manufacture and sale of wine and cider induced many to vote for the law as amended, and it was, in effect, argued that these amendments could not be treated as a part of the statute for the purpose of carrying the election and then be held void in order to save the law from being set aside as discriminatory. In support of this contention, defendants relied on *State ex rel. Huston* v. *Commissioners*, 5 Oh. St. 497, where the court was considering a local option statute, one section of which provided for an election to determine whether a county seat should be removed, and another (§ 5) contained unconstitutional provisions which were such "as would naturally influence the vote upon the adoption or rejection of the first and main section." It was held that: "The provisions of both sections are made equally to depend upon

the result of the election; they were submitted by the legislature collectively to the voters, and could only be passed upon as a whole; and . . . must, therefore, stand or fall together." But in that case the valid and invalid provisions formed an inseparable part of a single act which was void as a whole, whether treated as having been adopted by the legislature or the people. On the other hand in the case at bar the original Local Option Law of 1889 had been held to be constitutional as a whole, and its validity could not be impaired by the subsequent adoption of what were in form amendments but, in legal effect, were mere nullities.

2. It is true that the fact that these amendments were on the statute book may have influenced electors. Some may have voted for the law because of the supposed permission to make wine. Others may have opposed its adoption because of the supposed exemption of wine from the operation of the act. But in either event these void amendments were not a part of the law but extraneous inducements which may or may not have determined the result. The attack, therefore, goes rather to the regularity of the adoption than to the constitutionality of the statute after it had been adopted for Jackson County. But it was for the state court to determine that matter and to decide whether the election was void because the question apparently submitted was the adoption of the law and amendments, when, in reality, only the law itself was submitted. This court, on writ of error from a state court cannot inquire into the motives or arguments which influence men to vote for or against a measure. Neither can we reverse the decision of the state court, and declare the act inoperative in Jackson County because the electors thereof may have voted under a misapprehension as to the matter submitted, any more than we could set aside a statute because it had been enacted contrary to parliamentary rules relating to the introduction, debate and

passage of a bill. The original Local Option statute had been held to be constitutional, and prohibited, without discrimination, the manufacture of all liquors. That valid act the defendants violated and their conviction cannot be set aside on the ground that some or all of the electors voted to make the law operative in Jackson County under the supposition that as wine could be manufactured, the equal protection clause of the Constitution would make it likewise lawful to manufacture beer and other liquors.

3. Nor can the judgment be reversed because the original act, while prohibiting liquor to be sold by merchants permitted it to be sold by druggists for medicinal, mechanical or scientific purposes. The contention that this was an unlawful discrimination is answered by *Kidd* v. *Pearson,* 128 U. S. 1; *Rippey* v. *Texas,* 193 U. S. 504; *Lloyd* v. *Dollison,* 194 U. S. 445. Those cases show that the State may prohibit the sale of liquor absolutely or conditionally; may prohibit the sale as a beverage and permit the sale for medicinal and like purpose; that it may prohibit the sale by merchants and permit the sale by licensed druggists.

4. It was further contended that the act takes property without due process of law because it made no provision for the sale of liquor on hand at the time the law became operative. But the record does not call for a decision of that question, nor does it bring the case within the principle, suggested in *Bartemeyer* v. *Iowa,* 18 Wall. 129, 133, that a statute absolutely prohibiting the sale of property in existence at the time of the passage of the law would amount to confiscation and be void as depriving the owner of his property without due process of law. The defendants were not charged with selling property which was in their possession when the law went into effect in May, 1909, but with manufacturing beer in September, 1909, several months after its adoption. The fact that such beer may have been made for use in starting re-fermentation of

other beer that was on hand when the law became oper-
ative, does not bring the case within the principle for which
the decision is cited. For the right to manufacture beer
to be utilized in giving value to an unfinished brew is no
more protected by the Constitution than the right to
manufacture beer in order to utilize the brewery and
thereby preserve the value of the plant as a going concern.

Liquor laws are enacted by virtue of the police power
to protect the health, morals and welfare of the public.
Such laws may operate to depreciate the principal value
of distilleries, breweries and other property, in use and
on hand when the law is passed, but it has been held in
many cases that such depreciation is not the taking of
property prohibited by the Constitution. *Boston Beer Co.*
v. *Massachusetts*, 97 U. S. 25; *Mugler* v. *Kansas*, 123 U. S.
623. There is nothing in the record calling for a discussion
of the assignment of error relating to interstate commerce.
The judgment must be

*Affirmed.*