# CHARLESTON.

## STATE v. DAVIS.

Submitted October 26, 1915.  Decided November 30, 1915.

1. INTOXICATING LIQUORS—*Unlawful Advertisements—Non-resident—Criminal Responsibility.*

   A liquor dealer residing and doing business in another state, who, by the agency of the United States mails, sends into this state unsolicited and here circulates or distributes to prospective customers price lists, circulars and order blanks, advertising his liquors for sale and which he proposes to ship into this state to them, and which advertising matter by such agency is actually delivered to a citizen of this state, is guilty of a violation of section 8, chapter 13, Acts of the Legislature of 1913, known as the Yost Law, and may be here indicted and punished as provided by said act.  (p. 274).

2. COMMERCE—*Intoxicating Liquors—Unlawful Advertisements—Validity of Statute.*

   So construed, said act, by virtue of the acts of Congress known as the Wilson Act and the Webb-Kenyon Act, does not infringe the commerce clause of section 8 of article 1 of the federal constitution. (p. 274.)

3. CONSTITUTIONAL LAW—*Privileges and Immunities—Intoxicating Liquors.*

   Nor does the provision of section 8 of said act of 1913, so construed and applied, violate the "privileges and immunities" clause of the Fourteenth Amendment to the federal constitution.  (p. 281).

Error to Circuit Court, Harrison County.

Edgar W. Davis was convicted of advertising liquors for sale, in violation of Acts 1913, c. 13, §8 (Code 1913, c. 32A, §8 [sec. 1287]), and brings error.

*Affirmed.*

*J. E. Law*, for plaintiff in error.

*Fred O. Blue*, and *John T. Simms*, for the State.

MILLER, JUDGE:

The indictment charges defendant, in Harrison County, with unlawfully advertising and giving notice of sale and keeping for sale, of wines, beers, whiskeys and other intoxicating liquors of The Davis Big Mail Order Whiskey House, by the distribution of circulars, price lists and order blanks to

M. M. Carr, contrary to the statute in such cases made and provided, and against the peace and dignity of the State.

The statute alleged to have been thus violated is section 8, of chapter 13, of the Act of the Legislature of February 11, 1913, becoming effective July 1, 1914, entitled, "An Act to prohibit the manufacture, sale and keeping for sale of malt, vinous or spirituous liquors, wine, porter, ale, beer or any intoxicating drink, mixture or preparation of like nature, except" for certain purposes not material to this case; "and to enforce the amendment of section forty-six of article six of the state constitution, ratified on the fifth day of November, one thousand nine hundred and twelve; * * * and providing for the enforcement of this act and prescribing penalties for violations thereof." This statute is commonly known as the "Yost Law". Said section 8 is as follows:

"Sec. 8. If any person shall advertise or give notice by signs, bill board, newspapers, periodicals or otherwise for himself or another of the sale or keeping for sale of liquors, or shall *circulate or distribute any price-lists, circulars, or order blanks advertising liquors* or publish any newspaper, magazine, periodical or other written or printed papers, in which such advertisements or notices are given, or shall permit any such notices, or any advertisement of liquors (including bill boards) to be posted upon his premises, or premises under his control, or shall permit the same to so remain upon such premises, he shall be guilty of a misdemeanor and be fined not less than one hundred nor more than five hundred dollars."

The proof relied on, contained in an "Agreed Statement of Facts", submitted to the court in lieu of a jury, waived by the parties, in substance was: That defendant, a duly licensed wholesale and retail liquor dealer at Oakland, Garrett County, State of Maryland, and who had paid the internal revenue tax required by the United States, and was a citizen of the State of Maryland, and of the United States, and who before and subsequent to the date of the indictment had been engaged in what is called the mail order business, did, in July, 1914, "send or cause to be sent a circular letter, price-list and order blank, respecting the sale and keeping for sale of wines, beers, whiskies and other intoxicating liquors of the Davis Big

Mail Order Whiskey House; * * * through the United States Mail in an envelope, addressed to M. M. Carr, Clarksburg, West Virginia, the place of residence of said Carr;'' and which ''were unsolicited by said M. M. Carr, or anyone for him, and were received by him in said Harrison County, * * * * from the place of business ·of the said Davis * * * * in the said City of Oakland in the said State of Maryland, * * * * as aforesaid.'' Said circular letter, order blank, and price-list, and the envelope enclosing them with the address thereon, were attached to and made a part of said agreement and referred to as Exhibits numbered 1, 2, 3, and 4.

The circular letter, omitting the heading, is as follows: ''Dear Sir:

''We are now located at OAKLAND, MD:, in the wholesale liquor business and we will do business on a larger scale than ever.

''We are the largest wholesale dealers of pure, straight whiskies in the State—and the only wholesaler who sell their entire product direct to the consumer, thus saving you the profits of the middleman and dealers—and offering you the finest and purest qualities at the distiller's price.

''Special attention is called to our DAVIS PRIVATE STOCK, BOTTLED IN BOND WHISKEY, which we offer at only $3.20 for FOUR Full quarts, express charges paid, also our famous OLD FATHER JOHN and DAVIS FAVORITE at $4.00 for FOUR full quarts express prepaid— the only Bottled in Bond Whiskeys of this quality to be had anywhere at the price we name.

''It's really fine—a whiskey that has been distilled, aged and bottled under U. S. Government Supervision—and every bottle is sealed with the Government's Green Stamp over the cork—your assurance that it is fully aged, full 100 per cent proof, full measure—and every bit as fine as we say it is.

''Just for a starter—send us an order for this superb Bottled-in-Bond Whiskey—or such other Davis brands as you prefer. They're ALL good—ALL guaranteed by us under the U. S. Pure Food Laws—and sure to please you in every way. We ship all goods in strong sealed cases—pay all express charges and stand responsible for their safe delivery.

"Favor us with your order NOW. Fill out the order blank, mail it to us in the enclosed self addressed envelope and the goods will go forward by first express."

There can be no doubt, if done in West Virginia, the distribution of these advertisements constituted an offense inhibited by the statute.

The court below, on the record thus presented, found the defendant guilty as charged, and adjudged him to pay a fine of one hundred and fifty dollars and costs, and to that judgment he obtained the present writ and brought the case here for review.

The errors relied upon for reversal include the overruling of defendant's demurrer to the indictment with the bill of particulars filed, his motions to quash the indictment, to discharge him from further prosecution, and in arrest of judgment, all involving the same question, namely, is defendant guilty of having violated the statute as alleged in the indictment.

The validity of the statute, as applied to strictly local transactions, is not challenged. But it is contended that as applied to defendant, a non-resident liquor dealer, using the United States mail, the statute can have no effect, because to give it any other construction would contravene various provisions of the federal and state constitutions, and thereby render it void.

The provisions of the federal constitution referred to are, first, article 1, section 8, respecting the regulation of commerce between the states; second, article 14, section 1, of the amendments to the constitution, prohibiting any state from making or enforcing any law which shall abridge the privilege or immunities of citizens of the United States. And as a third ground it is said that the act or the part of the act in question here finds no warrant or authority in section 46, article 6, of the constitution of West Virginia, known as the "Prohibition Amendment."

We are not directly concerned here with any of the provisions of the act of 1913, except the provision of section 8 thereof, covering the subject of the indictment. The sale or keeping for sale, or the transportation of intoxicating liquors, in violation of the provisions of that act are not here involved.

We have presented no case of interstate commerce, unless the distribution in this state, of circulars, price-lists, and order blanks, advertising the sale and keeping for sale of such intoxicating liquors, by means of the United States mail, as charged and proven, constitute such commerce,

In *Hooper* v. *California,* 155 U. S. 648, contracts of insurance were held not to be articles of commerce, and negotiations therefor by a broker with non-resident corporations, without compliance with state regulation, were regarded as incidents to interstate commerce, and that the power to regulate interstate commerce could not be extended to all the incidents thereof. The case of *Williams* v. *Fears,* 179 U. S. 270, involved the validity of a general revenue statute of the State of Georgia, imposing a specific tax on the occupation of emigrant agents, or the business of hiring laborers to be employed without the state, and it was decided that such tax did not contravene any provision of the federal constitution.

However, prior to the Wilson Act, it was generally held, that any substantial restrictions placed on the business of soliciting and receiving orders for intoxicating liquors to be purchased and imported from another state, when subject to approval or rejection of the non-resident dealer, infringed the commerce provision of the federal constitution and were void. See cases collated in note to *Delamater* v. *South Dakota,* 10 Am. & Eng. Anno. Cases, 733, 736. And at least one case decided since the Wilson Act, contrary to the Delamater Case, so holds, upon one of the principles announced in that case, that the Wilson Act does not apply until the interstate shipment has been completed by the delivery of the goods to the consignee; wherefore, that act could not reach the incipient transaction of soliciting an order for goods not completed by actual receipt by the consignee at the point of delivery. Moreover, numerous decisions of the federal Supreme Court before and since the Wilson Act, beginning, perhaps, with *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489, and coming down as late as *Rearick* v. *Pennsylvania,* 203 U. S. 507, and cited in the Delamater Case, but not involving statutes or transactions confined to the liquor traffic, unite in holding that state statutes regulating or attempting to regulate the business of soliciting or receiving orders for

other classes of goods are inapplicable or void when applied or sought to be applied to interstate business.

Section 3, of our Yost Law, makes it unlawful to "solicit or receive orders for any liquors"; and section 8 thereof makes it likewise unlawful to advertise such liquors for sale in the manner charged in the indictment.

But in the face of these federal decisions how are these provisions of the statute to be applied to interstate business, or to transactions originating outside of the state? It is insisted of course that they fall at once under the protecting aegis of the Wilson Act, or if not so, that they now come under the protection of the Webb-Kenyon Law. The case of *Delamater* v. *South Dakota, supra*, is a direct decision that a local statute regulatory of the business of soliciting orders for liquor located in another state is valid when applied to one personally present in this state and engaged in the inhibited business. This upon the ground that such transaction is accessory or incidental to the business of bringing liquors into the state and there selling or otherwise disposing of them in violation of the local statute, and that any other construction of the Wilson Act would at least violate the spirit of that statute, and render the state helpless in the enforcement of its local statutes intended to be protected by that act.

Whatever may be said in criticism of the Delamater Case, it is our duty as well as pleasure to follow it, and we have followed it in *State* v. *Miller*, 66 W. Va. 436. In point one of the syllabus, we decided that the Wilson Act, as interpreted by the Supreme Court, "removed all limitations upon the powers of the states to regulate or prohibit, all sales, contracts and other acts and transactions, relating to intoxicating liquors, occurring wholly within their territorial jurisdictions."

The Delamater Case is not a direct decision on the specific point involved in this case. But anti-advertising liquor laws, like the one involved here, generally, have been held valid when applied to interstate transactions. *State* v. *Delaye*, (Ala.) 68 So. 993. Defendant was not personally or by agent in the state doing the things inhibited by statute; he made use of the United States mails to accomplish his purposes, and to do what if present personally or by agent he could

not lawfully have accomplished. In *R. M. Rose Co.* v. *State,* 133 Ga. 353, 65 S. E. 770, 36 L. R. A. (N. S.) 443, reversing the judgment of the lower court, it was distinctly decided that an indictment charging defendant with use of the mails in soliciting orders by means of advertising literature substantially as shown in this case constituted no offense under the penal code of that state. But as suggested in the note to this case, as reported in the 36 L. R. A., *supra,* while the Delamater Case may not be a direct decision on the powers of the state to regulate or prohibit the business of advertising or soliciting orders in the manner attempted in the Yost Law, that case nevertheless destroys any affirmative support against the existence of that power which might otherwise be derived from the earlier cases referred to.

It must be conceded that soliciting orders by means of advertisements, if resulting in a sale of liquors located outside of the state, though incidental thereto, would constitute a part of such sale, and that if prior to the Wilson Act, such soliciting would have been protected as interstate commerce, for unless a part of such commerce how could such personal solicitation and receipt of orders for liquors, prior to that act, have been brought under the protection of the federal constitution and protected thereby? Whether solicited by personal presence in the state, or by the use of the United States mails, the effect of the transaction with respect to the local statute would necessarily be the same.

Did the use of the mails by defendant in the manner shown constitute an offense under our statute? Federal protection to the liquor traffic having been withdrawn by the Wilson Act and the Webb-Kenyon Act, we think our statute covers the case presented by the pleadings and proof in this case. Use of the mails is not prohibited by the statute; but the business of soliciting orders by means of circulars, etc., is prohibited. It seems but a short step from the act of being personally present and soliciting orders or distributing advertisements to the doing of the same thing by the agency of the United States mails. We do not think a good ground of distinction can be suggested. Of course the object to be accomplished could not be attained except by delivery of the matter to prospective customers, but this end could as well be reached

by use of the mails as by the physical presence of the absent dealer in the state.

As applied to the Civil Service Act the Supreme Court of the United States could find no distinction between personal solicitation of funds for political purposes, and doing the same thing by means of letters sent through the agency of the United States mails. *United States* v. *Thayer,* 209 U. S. 39. In *Hayner* v. *State,* 83 Ohio St. R. 178, the solicitation of orders for liquor by means of letters sent into dry territory was given the same effect as personal solicitation therein, and held to constitute an offence under the statute, and not protected by the federal law, relating to the United States mails. So in *Zinn* v. *State,* (Ark.) 114 S. W. 227, it was decided that: "A statute making it unlawful to solicit orders for intoxicating liquors in prohibition territory, through circulars, is not unconstitutional as infringing the power of Congress, under U. S. Const. art. 1, §8, to establish post offices and designate what shall be excluded from the mails." And in *Palliser* v. *United States,* 136 U. S. 257, as well as in *United States* v. *Thayer, supra,* it was decided, as seems self evident, that one may solicit by letter as well as in person, and that such solicitationl is only accomplished by actual delivery at the place designated. The same rule was applied in *State* v. *Morrow,* (S. C.) 18 S. E. 853, involving the use of the mails to convey certain pills or drugs from the District of Columbia to a woman in South Carolina, to be used in effecting an abortion, in violation of the statute of that state. The principles of these cases are affirmed in *State* v. *Adams Express Co.,* 219 Fed. R. 794-800. And these cases all hold that the sender of such matter through the mails into prohibition territory may be held to answer for the offense at the place where received.

The only case holding to the contrary is that of *R. M. Rose Co.* v. *State, supra,* decided October 1, 1909, prior to the Webb-Kenyon Act, and which seems to have been based upon the theory that intoxicating liquors are, without qualification, legitimate interstate commerce, and unaffected by the Wilson Act or the Webb-Kenyon Law, for observe the language of the opinion: "To hold that a person had a right to make an interstate sale, but that the state to which the liquor was to

be sent could prohibit him from using the interstate mails for the purpose, would certainly greatly curtail the right to do such business.''

But assuming the Supreme Court of Georgia, in *R. M. Rose Co.* v. *State, supra,* to be right, in view of the Delamater and other cases, limiting the Wilson Act to personal solicitations of orders, or to transactions relating to liquors after actual delivery thereof to the consignee in the state of destination, what of the effect of the Webb-Kenyon Act on state regulations of this character? The title of that act is, ''An act divesting intoxicating liquors of their interstate character in certain cases.'' It provides that the shipment of intoxicating liquors into any state or territory when the same ''is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, is hereby prohibited.'' The title of this act as well as its provisions indicate the purpose of Congress to further remove federal restraints upon the powers of the states to deal with the liquor traffic. As interpreted in the Delamater Case, the Wilson Act removed all federal restraint upon the states in regulating the soliciting of orders for liquor to be imported and delivered to the consignee in violation of local statutes. And as applied to actual shipments of liquor, the Supreme Court in *Rhodes* v. *State of Iowa,* 170 U. S. 412, and *In Re Rahrer,* 140 U. S. 545, decided that the word ''arrival'' employed in the Wilson Act meant actual delivery of the liquor to the consignee, and that until then the state statute could not become operative upon an interstate shipment. Chief Justice Clark, in his concurring opinion in *State* v. *Cardwell,* (N. C.) 81 S. E. 628, 630, referring to the cases just cited, says: ''In this latter case, however, Chief Justice Fuller, speaking for the court, says: 'No reason is perceived why, if Congress chooses to provide that certain designated subjects of interstate commerce shall be governed by a rule which divests them of that character at an earlier period of time than would otherwise be the case, it is not within its competency so to do.' Upon this hint, Congress acted by passing the Webb-Kenyon law,

which does so divest intoxicating liquors of their interstate character at the earliest period of time, that is, upon their delivery to the carrier. In the same case Chief Justice Fuller further says: 'Congress did not use terms of permission to the state to act, but simply removed an impediment to the enforcement of the state laws in respect to imported packages in their original condition, created by the absence of a specific utterance on its part.' Congress in the Webb-Kenyon law acted upon this hint also and provided for the application of that statute to intoxicating liquor 'which is intended by any one interested therein to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such state.' ''

We think Judge Clark's interpretation of the Webb-Kenyon Act, though thought by the majority not to be involved in that case, has substantial foundation in the history of the federal legislation referred to. The Webb-Kenyon Act, in terms, is limited to the shipment or transportation of intoxicating liquors, and to liquors intended by any person interested therein to be received, possessed, sold, or in any manner used either in the original package or otherwise, in violation of the state statute. To bring sections 3 and 8, of the Yost Law, under this federal statute, and within the principles of the Delamater and other cases the things prohibited must be found accessory to or in some way incidental to the business of transporting liquors from one state or territory to another. The Yost Law undertakes to make the place of delivery within the state the place of sale. Wherefore, regardless of the rule of the common law, an outside dealer undertaking to effect a sale within the state by the use of the United States mails, would, if the statute be valid, be making a sale within the state in violation of the statute, whether such liquors were intended for the personal use of the purchaser or not.

A statute prohibiting soliciting of orders by means of such circulars or other advertisements, the offence of which defendant was found guilty, is certainly within the spirit and policy of the statute to prohibit the sale and manufacture of intoxicating liquors. And the carrying of such liquors into the state by a common carrier would be in furtherance of the unlawful purposes of those violating the statute.

Again, if orders should be obtained by means of circulars, or other advertisements inhibited by the statute, and result in a sale and delivery of liquors within the state, such sale would be a violation of the statute and be covered by the Webb-Kenyon statute.

So we conclude, in view of the interpretation of the Wilson Act, that this latest federal statute supplementing that act has so far removed restrictions upon state action as to validate the provisions of the Yost Law in question, and that defendant is guilty as charged.

We pass without further consideration the point that these provisions of the Yost Law infringed the "privileges and immunities" clause of the Fourteenth Amendment to the federal constitution. No personal right or privilege protected by the constitution is involved. The right to send liquors into the state, or there sell or solicit orders therefor, in violation of the state statute, is not a personal privilege, or one protected by the constitution. And the right and privilege of a citizen to obtain liquors for personal use in a lawful way are not involved.

*Judgment affirmed.*