PREMIER–PABST SALES CO. et al. v.
STATE BOARD OF EQUALIZA-
TION et al.
No. 779–Y.

District Court, S. D. California,
Central Division.
Dec. 11, 1935.

Meserve, Mumper, Hughes & Robertson (by Baldwin Robertson and William Larrabee), all of Los Angeles, Cal., for plaintiffs.

U. S. Webb, Atty. Gen., and Paul D. McCormick, Asst. Atty. Gen., for defendants.

Before MATHEWS, Circuit Judge, and YANKWICH and STEPHENS, District Judges.

YANKWICH, District Judge.

The 1935 Legislature of California enacted a statute known as the Alcoholic Beverage Control Act which became effective on July 1, 1935. Statutes of 1935, c. 330, p. 1123. In section 54 of the act, it is provided, among other things, that no manufacturer, rectifier, distiller, bottler, importer or wholesaler, as therein defined, or any officer, director, or agent of any such person shall lend any money or credit to any person operating an "on-sale" establishment (i. e., an establishment selling alcoholic beverages for consumption upon the premises), or furnish, give, rent, or sell, directly or indirectly, any equipment, furniture, or supplies to such establishment, or furnish, give, lend or rent, directly or indirectly, any decorations, painting or signs other than signs for interior use of not to exceed an area of 630 square inches, or pay money or anything of value for the privilege of placing or painting a sign or advertising or window display on or in any premises selling alcoholic beverages for retail trade. They are also forbidden to own any interest, directly or indirectly, in the business, furniture, fixtures, signs, except signs for interior use. The violation of the provisions of this section is made punishable as a misdemeanor. Equipment, furniture, and supplies acquired prior to the passage of the act are excepted.

Section 55 of the act prohibits the maintenance upon or adjacent to the outside of any building, in connection with any premises licensed therein to sell alcoholic beverages at retail, of any signs advertising in whole or in part any alcoholic beverages exceeding an area of 720 square inches. It also prohibits the use of any sign containing the words "bar," "barroom," "saloon," "cocktail bar," or "lounge," or words of like or similar import. The violation of the provisions of this section is also made a misdemeanor. Elsewhere in the act (section 40), the violation of this or of any other provision of the act or regulation under it may subject the licensee to the revocation of the license.

The plaintiffs are foreign corporations qualified to do business in California, and engaged in the manufacture and sale of alcoholic malt beverages in many states of the United States. None of the plaintiffs is engaged in the manufacture of alcoholic malt beverages within the state of California; their activities therein being limited to the sale of such beverages. The defendants are the state board of equalization charged with the main duty of enforcing the act, the Governor of the state, the Attorney General of the state, and the chief control officers of the board of equalization in the administration of the act. Prior to the enactment of the Alcoholic Beverage Act, and at a time when there were no limitations or restrictions in the state of California upon the size of signs advertising alcoholic beverages or the place where such beverages were sold, the plaintiffs caused to be constructed and paid for a large number of signs. The number so constructed by Premier-Pabst Sales Company was 260, varying in dimensions from 3 feet by 5 feet to 9 feet by 5 feet, and varying in cost to it of from $325 per sign to $425 per sign, or a total cost in excess of $100,000. The signs were "Neon" signs operated and illuminated by electricity, and so constructed that they cannot be dismantled or removed without destruction. Prior to July 13, 1935, plaintiff Premier-Pabst Sales Company, pursuant to contracts and arrangements with various retail and "on-sale" licensees and retailers

of beer, caused signs to be erected and maintained and used upon and adjacent to the outside of buildings and in connection with premises licensed to sell alcoholic beverages at retail for consumption. The signs have been lent to the retailers, and, in many instances, the plaintiff brewing company has agreed to pay and has paid retailers a rental or fee for the privilege of maintaining and displaying such signs. Each of such signs was upon private property, and, the bill of complaint alleges, that it is "in no wise offensive, harmful or detrimental to the public or to any private person or to public or private morals or taste or to the public health or human life; and that none of said signs is of an obnoxious, gaudy, blatant or offensive nature, nor does any of said signs in any manner obstruct the view of the interior of any retail establishment from the street."

Substantially under the same conditions, Joseph Schlitz Brewing Company has caused to be erected signs in dimensions in excess of 720 square inches and of the value of $50,000, while Anheuser-Busch, under somewhat similar circumstances, has caused to be erected signs which also exceed the size now declared the maximum and of the value of $50,000. Purporting to act under the authority of the act, the board of equalization on July 2, 1935, promulgated the following rule:

"Rule 12, Subdivision E: Licensees Who Fail to Observe Sign Restrictions May Lose Licenses. The licenses of licensees who fail to comply with the provisions of the Act and the regulations respecting the display of signs will be subject to suspension or revocation by the board.

"Signs displayed in violation of the Act and the rules and regulations of the board and which were erected prior to July 1, must be removed by August 1. All signs erected after July 1, in violation of the Act and the rules and regulations, must be removed immediately."

On November 8, 1935, an order of the board was issued requiring that by Monday, November 18, 1935, all signs exceeding 720 square inches in area be removed, and that all signs owned, lent, rented by plaintiffs to any on sale licensee or retailer be removed, and threatening the suspension or revocation of license of persons failing to comply with the order.

In addition to this, it is stated in the bill of complaint that the defendants have threatened to prosecute the plaintiffs, should said signs not be removed, and that the wholesaler's and distributor's license of the Premier-Pabst Sales Company will be suspended and revoked. Plaintiffs desire to maintain the signs so purchased. The threatened actions upon the part of the defendants will cause the plaintiffs irreparable loss and damage; the destruction and confiscation of property without compensation. Judgment declaring the act and its enforcement invalid and injunctive process against the threatened acts of the defendants is asked.

The basis of the attack is that in so far as the defendants seek to apply the terms of the act regulating the size of signs to signs already in existence, the action deprives the plaintiffs of property without due process contrary to the provisions of the Fourteenth Amendment to the Constitution of the United States.

We need not enter into a discussion of the meaning of due process. It may be conceded that there is an inherent right in every person to carry on a legitimate business, subject, of course, to such reasonable rules and regulations as state governmental bodies, under the police power and general welfare clauses, may enact. It may also be conceded that cases exist where courts have declared invalid enactments prohibiting arbitrarily the use of certain forms of advertising (such as billboards) where no relation was shown to exist between the particular method and any governmental object to be attained. See Varney & Green v. Williams (1909) 155 Cal. 318, 100 P. 867, 21 L.R.A.(N.S.) 741, 132 Am.St.Rep. 88; Pacific Rys. Advertising Co. v. Oakland (1929) 98 Cal.App. 165, 276 P. 629. It is also the rule that where, by federal law, alcoholic beverages are recognized as a legal subject of interstate commerce, the state cannot, even in aid of its own policy of regulation or prohibition, prohibit the free flow of liquor (or other legal articles) in interstate commerce, although it may establish rules of inspection or regulations as to size of package. See Scott v. Donald (1897) 165 U.S. 58, 17 S.Ct. 265, 41 L. Ed. 632; and see Pacific States Box & Basket Co. v. White et al., 56 S.Ct. 159, 80 L.Ed. ——, decided November 18, 1935; Young's Market Co. v. State Board of Equalization (D.C.Cal. 1935) 12 F.Supp. 140. We now consider the bill of complaint in the light of these general principles.

In their motion to dismiss the bill, the defendants urge that it does not state facts sufficient to constitute a cause of action, that the court is without jurisdiction over the subject-matter of the bill, and that the legislation attacked is a proper and legitimate exercise of the police power of the state, and that the plaintiffs are not affected by the provisions of the Alcoholic Beverage Control Act alleged by them to be unconstitutional.

Prior to the enactment of national prohibition, California exercised control of the liquor traffic chiefly through local governmental bodies. In 1922, the State Prohibition Enforcement Act was adopted, known as the Wright Act (Statutes of 1921, p. 79), which was repealed by an initiative measure at the general election held on November 8, 1932 (St.Cal. 1933, p. lxxxviii). At the same election the following amendment to the Constitution of California was adopted (Constitution of California, article 20, § 22): "In the event of the repeal of the State Prohibition Enforcement Law, commonly known as the Wright Act, and if and when it shall become lawful under the Constitution and laws of the United States to manufacture, sell, purchase, possess or transport intoxicating liquor for beverage purposes within the United States the State of California, subject to the internal revenue laws of the United States, shall have the exclusive right and power to control, license and regulate the manufacture, sale, purchase, possession, transportation and disposition of intoxicating liquor within the State, and, subject to the laws of the United States regulating commerce between foreign nations and among the States, shall have the exclusive right and power to control and regulate the importation into and the exportation from the State of intoxicating liquor; provided, however, no public saloon, public bar or barroom or other public drinking place where intoxicating liquors to be used for any purpose shall be kept, bought, sold, consumed or otherwise disposed of, shall ever be established, maintained or operated within the State; provided, further, subject to the above provisions, that in hotels, boarding houses, restaurants, cafes, cafeterias, and other public eating places, wines and beer may be served and consumed with meals furnished in good faith to the guests and patrons thereof, and the Legislature may authorize, subject to reasonable restrictions, the sale in retail stores of liquor contained in original packages, where such liquor is not to be consumed on the premises where sold." Stats. 1933, p. lxxx.

The Legislature of 1933 enacted the first Liquor Control Act following the repeal of prohibition. Stats. 1933, p. 1697. This enactment was superseded by the present Liquor Control Act, sections of which are under attack in this proceeding.

The right of the plaintiff to institute this proceeding is challenged upon the ground that the regulations complained of are directed at retailers, and that as the plaintiffs are not retailers, they are not in a position to complain. Leaving out of consideration the question whether the plaintiffs may not complain of a statute directed at others which interferes with their property rights, we prefer to base our determination of this matter upon certain more fundamental principles involving the validity of the enactment irrespective of the person whom it may affect adversely. We think the determination of the questions involved depends upon certain principles which have been definitely established for a long time.

Because of the nature of the product sold, courts have taken the view that there is no inherent or natural right to manufacture or sell alcoholic beverages, and no vested right in the business or property with which the business is carried on to prevent its control or entire destruction by legislative process. In Crowley v. Christensen (1890) 137 U.S. 86, 11 S.Ct. 13, 15, 34 L.Ed. 620, the Supreme Court, speaking through Mr. Justice Field, said: "There is no inherent right in a citizen to thus sell intoxicating liquors by retail. It is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority."

Through legislative process, the business may be regulated or entirely prohibited. Because of this, when the aim of the Legislature is not to prohibit, but to control, the ordinary test of control applicable to ordinary business will not apply. Rightly so, because what a legislative body may entirely prohibit, it certainly can regulate drastically, if it deems best for society. And courts, when confronted with

regulations even of the most drastic character, will not substitute their judgment for that of the legislative body, but will sustain the regulations if they appear reasonably intended to achieve the result aimed at. So regulations and prohibitions of the business of intoxicating liquors have been upheld despite their result in depreciation or even destruction of property or interference with established contractual rights. See Mugler v. Kansas (1887) 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205; Eberle v. Michigan (1914) 232 U.S. 700, 34 S.Ct. 464, 58 L.Ed. 803. The courts of California have taken the same attitude. See Reed v. Collins (1907) 5 Cal.App. 494, 90 P. 973; Guzzi v. McAlister (1913) 21 Cal.App. 276, 131 P. 336; Sandelin v. Collins (1934) 1 Cal.(2d) 147, 33 P.(2d) 1009, 1011, 93 A.L.R. 956. In the case last cited, the court says: "Indeed, the state, independent of the constitutional provision, would have that right under the police power, and having the power to prohibit entirely could impose such conditions and regulations as it might deem proper. Ex parte Christensen, 85 Cal. 208, 24 P. 747; Matter of Application of Anixter, 166 Cal. 762, 138 P. 353."

In Giozza v. Tiernan (1893) 148 U.S. 657, 13 S.Ct. 721, 723, 37 L.Ed. 599, the Supreme Court adopted a similar test in dealing with the power of state legislative bodies to regulate the mode and manner and the circumstances under which the traffic in alcoholic liquors may be conducted, and sustained the power of the state Legislature to surround the right to pursue it "with such conditions, restrictions, and limitations as the legislature may deem proper."

Irrespective of these special rules applicable to the traffic in alcoholic liquors, the right of legislative bodies to control billboard advertising or advertising by signs, in the exercise of the police power, have been upheld. Such regulation is not an invasion of due process under the Constitution of the United States, if contractual rights or even property rights are invaded or destroyed. See Thomas Cusack Co. v. Chicago (1917) 242 U.S. 526, 37 S. Ct. 190, 61 L.Ed. 472, L.R.A. 1918A, 136, Ann.Cas. 1917C, 594; St. Louis Poster Advertising Co. v. City of St. Louis (1919) 249 U.S. 269, 39 S.Ct. 274, 276, 63 L.Ed. 599; Packer Corporation v. Utah (1932) 285 U.S. 105, 52 S.Ct. 273, 275, 76 L.Ed. 643, 79 A.L.R. 546; and see Armour & Co. v. North Dakota (1916) 240 U.S. 510, 36 S.Ct. 440, 60 L.Ed. 771. The state courts of California have recognized the same principles. They have asserted that what may be prohibited can be regulated. In re Cutting (1911) 17 Cal.App. 604, 121 P. 304. They have even sustained legislative enactments which made the continuance of certain forms of advertising or soliciting dependent upon the wish and desire of private persons. See In re Barmore (1917) 174 Cal. 286, 163 P. 50, L. R.A. 1917D, 688; In re Stratham (1920) 45 Cal.App. 436, 187 P. 986; Sandelin v. Collins, supra.

■ In the light of these principles, the chief problem presented by this proceeding is easy of solution. Section 55 of the California Liquor Control Act, in so far as it prohibits any signs advertising any alcoholic beverage exceeding an area of 720 square inches and prohibits altogether signs using the words "bar," "bar-room," "saloon," "cocktail bar," or "lounge," or words of similar import upon or adjacent to the outside of any building in connection with any premises therein licensed to sell alcoholic beverages, at retail for consumption thereon, does not go counter to any constitutional inhibitions. There being no inherent right to conduct the business of selling alcoholic beverages, that inhibition applies equally to any business in aid of it. There is no inherent right to use signs in advertising the sale of liquor on the establishment where it is being sold. Time has demonstrated the need for the regulation of this business. Attempts to control the sale of wines are found in the oldest code, the Code of Hammurabi, antedating the Christian era by 2300 years. See the Code of Hammurabi, translated by Robert Francis Harper (1904) clauses 108–111. Advertising by the method of signs has a perpetual and constant appeal. Some signs actually "shriek" their wares at the citizen, while others, through attractive untruths, insinuate their influence. The reduction of the size and the prohibition of the use of signs designating the place where alcoholic beverages are sold does have a relation to the appeal for indulgence. We are an advertising-conscious nation. The Legislature, no doubt, thought that it may help the cause of temperance to "chasten" advertising methods. During the reign of prohibition, courts repeatedly sustained legislative enactments, both national and state, aiming to place the alcoholic content of legal beverages at a

maximum, where by scientific tests they could not possibly have an intoxicating effect, upon the ground that they were in aid of prohibition. See Jacob Ruppert v. Caffey (1920) 251 U.S. 264, 40 S.Ct. 141, 64 L.Ed. 260; James Everard's Breweries v. Day (1924) 265 U.S. 545, 44 S.Ct. 628, 68 L.Ed. 1174; Vigliotti v. Pennsylvania (1922) 258 U.S. 403, 42 S.Ct. 330, 66 L. Ed. 686; Selzman v. United States (1925) 268 U.S. 466, 45 S.Ct. 574, 69 L.Ed. 1054. The argument is stressed that the regulation, if made to apply to signs already purchased by the plaintiffs and put in use, will result in their destruction. In fact, it is alleged in the bill of complaint that the application of the statute to existing signs would result in the destruction of property worth $200,000. Such a result, it is insisted, is a denial of due process. The answer to this contention is contained in the pithy statement of Mr. Justice Holmes in St. Louis Poster Advertising Co. v. City of St. Louis, supra: "As to the plaintiff's contracts, so far as appears they were made after the ordinance was passed, but if made before it they were subject to legislation not invalid otherwise than for its incidental effect upon them. Atlantic Coast Line R. Co. v. Goldsboro, 232 U.S. 548, 558, 34 S.Ct. 364, 58 L.Ed. 721. The same thing may be said, apart from other answers, with regard to the alleged standardizing of the size of posters."

Apposite to the subject is also the following language of Mr. Justice Brandeis from Packer Corporation v. Utah, supra, involving the prohibition of display advertising of tobacco products by the state of Utah: "The defendant contends that to make it illegal to carry out the contract under which the advertisement was displayed takes its property without due process of law because it arbitrarily curtails liberty of contract. The contention is without merit. The law deals confessedly with a subject within the scope of the police power. No facts are brought to our attention which establish either that the evil aimed at does not exist or that the statutory remedy is inappropriate."

While the above statements dealt with the effect of such regulations or prohibitions upon persons holding contracts for the construction of signs, they apply with equal force to the effect of such regulations or prohibitions upon the owners of signs. A contract is a property right. If a state may regulate billboards or poster advertising to such an extent as to destroy the property rights of advertising without doing violence to the due process clause of the Constitution of the United States, the effect of such regulation or prohibition upon the owners of the signs cannot constitute an infringement of rights without due process. Ultimately, if there be invasion in either case, it is the invasion of a property right, whether it be the right of contract or the right of ownership. If, in the exercise of the police power, the state may, by prohibiting or regulating certain types of advertising, bring an end to contractual rights existing in such methods of advertising, it may, in like manner, invade the property rights involved in the ownership of such methods of advertising. And if this be true of the power of the state with regard to certain methods of advertising applicable to businesses, the carrying on of which is inherent in individuals or corporations, the principle applies with greater force when we are dealing with the business of intoxicating liquor which is not the right of a citizen of the state or a citizen of the United States. In the complex world in which we live, the trend of courts is to adopt even as to legitimate business the principle that no one shall be allowed to use his property in a manner to harm his fellows. Nebbia v. New York (1934) 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469. The liberal approach to the problem of state regulation under the police power which the majority of the Supreme Court in the case just cited enjoined upon the courts and under which a legislative enactment, aiming to achieve greater social control, should not be declared invalid unless it is really capricious, and which denies to courts the function of arbiters of social policy, calls for a stricter application when we are dealing with a business which it is not the right of every one to carry on, and which for 4,000 years, in one form or another, in every nation of the civilized world, has engaged the attention of the legislator.

 Counsel for the plaintiffs insist that because the sale of alcoholic beverages is now legal in California, the regulation of the ownership or size of signs is invalid, because no relationship can exist between them and the safeguard of the life and health of the people. Legality does not give immunity. That is true of any business; truer of a business which has required so much regulation as the sale of alcoholic beverages. Advertising is one of

the incidents in the sale of liquors. If the state, under its police power, can prohibit the whole business from being carried on, it can prohibit and control any of its incidents. The prohibition against certain forms of advertising is really a prohibition against soliciting of business. Advertising is soliciting in the last analysis. See State ex rel. West v. State Capital Co. (1909) 24 Okl. 252, 103 P. 1021; Advertiser Co. v. Alabama (1915) 193 Ala. 418, 69 So. 501; State v. Davis (1915) 77 W. Va. 271, 87 S.E. 262, L.R.A. 1917C, 639; State ex rel. Black v. Delaye (1915) 193 Ala. 500, 68 So. 993, L.R.A. 1915E, 640. It is insisted that section 54 is discriminatory, in that it is directed not so much at signs as at the ownership of signs of wholesalers. The section read in conjunction with section 55 shows that the intention was to regulate the size of the signs by whomsoever owned. If the Legislature at the same time sought to avoid such control as comes from ownership of the equipment of retail establishments by the wholesaler, the object in this respect was merely incidental. As the law stands, signs exceeding the size prescribed by statute by whomsoever owned, whether by wholesaler or retailer, whether the wholesaler be an out-of-state individual or corporation or a citizen or domestic corporation, are prohibited. Nor do we discern any discrimination in the fact, adverted to in the bill of complaint or stressed at the oral argument, that other signs equally objectionable advertising liquors are not regulated as to size. A law is generally uniform in its application when it applies equally to all persons embraced within the class, providing such class is based upon some natural, inherent or constitutional distinction between those composing it and others not embraced in it. It is not enough to invalidate a law that it does not prohibit other acts equally injurious, if, as a matter of fact, it appears from an examination of the statute that there is reasonable ground for the classification. As has been said, lack of abstract symmetry will not destroy a proper classification. See Patsone v. Pennsylvania (1914) 232 U.S. 138, 34 S.Ct. 281, 58 L.Ed. 539; In re Miller (1912) 162 Cal. 687, 698, 124 P. 427; In re Sumida (1918) 177 Cal. 388, 170 P. 823; Whyte v. City of Sacramento (1924) 65 Cal.App. 534, 224 P. 1008; In re Rameriz (1924) 193 Cal. 633, 226 P. 914, 34 A.L.R. 51. The police power of the state is an indispensable prerogative of sovereignty. In interpreting it we must bear in mind the greater need for social control in a constantly changing world. See Miller v. Board of Public Works (1925) 195 Cal. 477, 234 P. 381, 38 A.L.R. 1479; Boston Beer Co. v. Massachusetts (1877) 97 U.S. 25, 24 L.Ed. 989; Rippey v. Texas (1904) 193 U.S. 504, 24 S.Ct. 516, 48 L.Ed. 767; Village of Euclid v. Ambler Realty Co. (1926) 272 U.S. 365, 887, 47 S.Ct. 114, 71 L.Ed. 303, 54 L.Ed. 1016; Home Building & Loan Ass'n v. Blaisdell (1934) 290 U.S. 398, 54 S.Ct. 231, 78 L. Ed. 413, 88 A.L.R. 1481.

"It may be said in a general way," wrote Mr. Justice Holmes, in delivering the opinion of the court in Noble State Bank v. Haskell (1911) 219 U.S. 104, 111, 31 S.Ct. 186, 188, 55 L.Ed. 112, 32 L.R.A. (N.S.) 1062, Ann.Cas. 1912A, 487, "that the police power extends to all the great public needs. Camfield v. United States, 167 U.S. 518, 17 S.Ct. 864, 42 L.Ed. 260. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare."

So, in the last analysis, in passing upon the exercise of the police power, ours is not the function to determine whether the legislation is wise or foolish. Ours is the function to determine whether there is a reasonable basis for the belief of the Legislature that the particular legislation was desirable. The insidious nature of advertising, the fact that a sign descriptive of liquor upon a building or on an establishment for its sale is really an invitation to come in and consume it, while a similar sign at a place distant from such an establishment is merely an abstract description of the qualities of the beverage, may warrant different legislative treatment. While both may contain invitations to consume the beverage, in the one instance the invitation may be followed by immediate acceptance, while in the other, it cannot be so followed. Judging the effect of such advertising, it is quite apparent that it is one thing to see a sign while one walks down a street or rides in an automobile, and quite another thing to see even the same sign upon the wall of an establishment which sells the article extolled in the advertisement. These obvious facts are sufficient, to our mind, to show that there is a reasonable basis for regulating signs upon buildings in which establishments for the retail sale of alcoholic beverages are housed. Regulations of this character aim-

ing to restrict the soliciting of sales of liquor by advertising or other methods have been held repeatedly to be within the police power of the state, as the authorities already cited show conclusively. See, also, Grumbach v. Lelande (1908) 154 Cal. 679, 98 P. 1059; In re Cutting (1911) 17 Cal. App. 604, 121 P. 304; In re Anixter (1913) 22 Cal.App. 117, 134 P. 193; State ex rel. West v. State Capital Co. (1909) 24 Okl. 252, 103 P. 1021. On the general power to regulate advertising, see San Francisco Shopping News Co. v. City of South San Francisco (C.C.A. 9th Cir. 1934) 69 F.(2d) 879.

We conclude that the provisions of the act under attack are a proper exercise of the police power of the state, and do not in effect or application involve a violation of any of the rights guaranteed to the plaintiffs under the Fourteenth Amendment to the Constitution of the United States. It follows that the bill of complaint does not state facts sufficient to constitute a cause of action. The conclusion thus reached calls for the granting of the motion to dismiss the bill and the denial of an interlocutory injunction. It is so ordered.