[Civ. No. 6558. First Appellate District, Division Two.—April 8, 1929.]

PACIFIC RAILWAYS ADVERTISING COMPANY, a Corporation, et al., Respondents, v. CITY OF OAKLAND, a Municipal Corporation, et al., Appellants.

Eugene K. Sturgis, City Attorney, Preston Higgins, City Attorney, and C. Stanley Wood, Assistant City Attorney, for Appellants.

Brobeck, Phleger & Harrison and Chapman, Trefethen & Chapman for Respondents.

GOODELL, J., *pro tem.*—This appeal was taken from a judgment and decree permanently enjoining the City of Oakland, the members of its council, its chief of police and its city attorney from enforcing an ordinance prohibiting commercial advertising on the exterior sides of street-cars. The decree declared the ordinance to be unconstitutional and void.

The following facts are alleged in the complaint and not denied: The plaintiff Key System Transit Company, a Cali-

fornia corporation, operating a street railway system under franchises from the City of Oakland and the county of Alameda, made a contract with its coplaintiff, Pacific Railways Advertising Company, whereby the Transit Company granted to the Advertising Company the exclusive right to advertise in, upon and about all its cars from October 30, 1925, to December 31, 1931, for a consideration of $40,000 a year.

The Advertising Company, at an expense of more than $8,000, placed upon each side of every car two sheet metal frames approximately twenty-two inches wide, twenty-eight inches long and 1/32-inch thick, to hold advertising matter. Thereafter the council enacted ordinance No. 3568 (N. S.), making it unlawful to operate a street-car within the city "while there is attached to the exterior sides thereof, . . . any frame or device made of metal, wood or other substance, for the insertion or for the purpose of holding and displaying any reading matter" or with "any bill, poster, notice, or advertisement advertising the business, or goods, wares or merchandise of any merchant, manufacturer or any person other than the owner or lessee of the street railway" on such sides, whether posted, stuck, stamped, painted or otherwise affixed thereon. None of the frames project from the sides of the cars more than three-fourths inch and the grab-rails, steps, rivets and other such parts of the car itself project beyond the frames. The frames match the cars in color.

Other allegations (hereafter discussed), designed to show wherein the ordinance was unreasonable and void, and, particularly, to show that what the plaintiffs had done constituted no menace to the public safety, comfort or morals, were denied, and on all the issues thus made the court found in favor of the plaintiffs. The answer also raised an issue as to the Transit Company's authority "to carry or maintain advertisements for hire on the exterior sides of its cars," on which issue the court also found in favor of the plaintiffs.

The appellants seek a reversal on the grounds (1) that the ordinance is a valid exercise of the police power, and (2) that the Transit Company has no power or authority under its articles or franchises to engage in advertising business.

■ In entering upon the inquiry as to the validity of the ordinance we are, of course, mindful of the rule, stressed by appellants, that every intendment and presumption is in

favor of its validity. But we have in mind, also, the settled principle that if a statute or ordinance "purporting to have been enacted to protect the public health, the public morals, or the public safety has no real or substantial relation to those objects" it is the duty of the courts to so adjudge. (*Mugler* v. *Kansas,* 123 U. S. 661 [31 L. Ed. 205, 8 Sup. Ct. Rep. 273, see, also, Rose's U. S. Notes] ; *Ex parte Whitwell,* 98 Cal. 73, 79 [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870].) ▇ And in pursuing this inquiry the courts are not limited to a consideration of the face of the ordinance alone. It is settled law that a plaintiff may show by extrinsic evidence that an ordinance, by reason of particular facts and circumstances, is unreasonable, oppressive and void as to him. (*In re Smith,* 143 Cal. 368, 370 [77 Pac. 180] ; *Ex parte Elam,* 6 Cal. App. 233, 238 [91 Pac. 811] ; *Abbey Land etc. Co.* v. *San Mateo,* 167 Cal. 434, 437 [Ann. Cas. 1915C, 804, 52 L. R. A. (N. S.) 408, 139 Pac. 1068].)

In the Smith case, *supra,* the ordinance prohibited gas-works, gas-tanks, etc., within a defined area. The works had been built before the passage of the ordinance, and the petitioner alleged and proved the physical and geographical surroundings as well as the safeguards provided and the precautions taken respecting the works, all addressed to the question of the reasonableness of the ordinance. The court said: "It being within the powers of the board of supervisors in proper cases to regulate, or even to prohibit, the manufacture of gas within prescribed limits, this ordinance upon its face would appear to be innocuous and valid. It became necessary, therefore, for the pleader in his petition to set forth the matters *dehors* the ordinance, by virtue of which he contends that the ordinance is unreasonable, oppressive and void."

Thus, in the case at bar, to establish that the ordinance bears no relation to the police power, and to show that it is unreasonable in its operation and application to them, the plaintiffs alleged that the frames, and the advertisements in them, are of a type generally and customarily used upon street-cars in the principal cities of the United States and Canada; that the advertisements are sightly, and always have been those of reputable persons conducting legitimate businesses; that the "frames are so constructed that they

cannot possibly endanger the safety or comfort of passersby or of any persons''; that neither the frames nor the advertising have caused, or can cause, or tend to cause, any congestion or obstruction of traffic; further that none of the provisions of the ordinance are necessary to protect the public health, comfort, morals, safety or general welfare. The allegation respecting the alleged custom was denied for want of information or belief. The allegations that the frames endangered no one and that the advertisements did not cause, or tend to cause, congestion of traffic were not only specifically denied, but the city affirmatively alleged that the frames constitute a menace to the safety and comfort of pedestrians and motorists and that they are so placed ''as to catch and hold the clothing of passersby and pedestrians and portions of passing vehicles, and particularly to catch the clothing'' of traffic officers on the streets and between the cars; also that the advertisements were designed to, and do, attract the attention of pedestrians and motorists and so cause them ''to become careless and disobedient of traffic rules and regulations and neglectful of their own safety.'' The city also alleged that the colors of the advertisements were ''antagonistic to, unharmonious and contrasting with the colors of the street cars''; ''gaudy, striking and unpleasing''; ''all colors of the rainbow.'' The answer denied that the provisions of the ordinance were not necessary to protect the public safety, comfort, morals, etc.

To prove the custom of advertising by means of similar frames, photographs were introduced of street-cars operating in St. Joseph, Cincinnati, Washington, D. C., and Winnipeg. To establish that the grab-rails, steps and rivets of the Transit Company's cars project beyond the frames, the plaintiffs introduced oral testimony and photographs. The plaintiffs proved that the frames are securely fastened to the sides of the cars, the edges of the frames being smoothed so that they cannot catch or engage anything. None of this evidence was contradicted.

The appellants introduced a chart showing that the frames project from the sides of the cars, one-half inch, five-eighths inch and at most three-fourths inch (which was conceded by the respondents) and showing the colors of the advertising matter. The trial judge, on stipulation, inspected the cars.

Findings on all these issues were in favor of the plaintiffs, concluding that ''none of the provisions of said ordinance are necessary to protect the public health, comfort, morals, safety, or general welfare.''

The respondents take the position that these findings define and control the legal questions presented on the appeal, and a careful consideration of the case convinces us that they do. The plaintiffs' proof showed the frames to be safe and the advertisements to be neither immoral nor offensive. The appellants had ample opportunity to show every element and factor going to make the frames dangerous or to render the advertisements offensive to decency or morality, or having even a tendency to do so. The frames had been in use for some months at the time of the trial, and if, in that interval, anything had happened to demonstrate that there was any hazard, proof of such experience certainly would have been admissible. Indeed but a slight showing by the city would have been necessary to overcome the case made by the plaintiffs, for it is well settled that an ordinance or statute will be upheld unless it be shown beyond a reasonable doubt that it bears no relation to the exercise of the police power. If the question be debatable—one on which reasonable minds might differ—the ordinance should be held valid.

We are satisfied that the case at bar falls into that class of cases where a legislative body, in seeking to prevent some real or fancied evil or danger, in a business or activity not in itself wrong or unlawful, has gone about it not by reasonable regulation but by absolute prohibition. What the council was really concerned with was the protection of the public from harm or injury from dangerous or improper signs or advertisements on street-cars.

In *Ex parte Whitwell,* 98 Cal. 73 [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870], an ordinance of San Mateo County required a license as a prerequisite to the operation of any hospital or asylum for the insane, and prohibited its maintenance at all unless the buildings were not more than two stories high and constructed of brick or stone and iron and surrounded by a brick or stone wall twelve feet high and eighteen inches thick, etc. The court found that the class of inmates rendered it wholly unnecessary that their confinement be insured by any such type of construc-

tion and that, therefore, there was no relation between these provisions and the proper exercise of the police power. It was held that the ordinance imposed upon the petitioner's business "such burdensome, oppressive and unreasonable conditions as in effect to amount to its prohibition."

In the Smith case, *supra*, it was held that the prohibition by the supervisors of gasworks in the rural district there described was wholly unnecessary. That ordinance sought not to *regulate* gasworks which might, admittedly, become a menace, but to *prohibit* all gasworks in a given area.

In *Abbey Land etc. Co.* v. *San Mateo, supra,* the supervisors of San Mateo County attempted to prohibit the maintenance of more than one crematory in any one township. The court held that as it prohibited the plaintiffs "from using their property in a lawful business and in an innocent manner, it must be declared void as an unwarranted infringement of the right of acquiring, possessing and protecting property." It was "conceded, of course, that if a crematory is, or may be, operated in a manner which may cause injury to the public health, comfort or convenience, the local legislative authority may make reasonable regulations of the manner of conducting it so as to decrease or prevent such injury." The decision emphasizes very clearly the difference between outright and absolute prohibition and reasonable and necessary regulation, and its application to the case at bar is obvious.

Another case pointing out this distinction is *San Diego Tuberculosis Assn.* v. *East San Diego,* 186 Cal. 252 [17 A. L. R. 513, 200 Pac. 393], where it was attempted to prohibit within the city limits any hospital for the treatment of contagious or infectious diseases. "Such prohibition," says the court, "is very different from regulation and can be justified only on the ground that such a hospital, no matter how well conducted, is a menace," etc.

The attempts which have been made in this state and elsewhere to prohibit billboards seem to us to be, in their essentials, not unlike the attempt to prohibit this exterior street-car advertising. True, a billboard is a stationary thing on private property, while a street-car moves over public streets. But both are subject to regulation when there is any threat of harm to the public safety, comfort or morality. In the case of *Varney & Green* v. *Williams,* 155

Cal. 318, 320 [132 Am. St. Rep. 88, 21 L. R. A. (N. S.) 741, 100 Pac. 867], the ordinance made "no attempt to restrict the operation of the enactment to billboards that may be insecure or otherwise dangerous, or to advertising that may be indecent," but prohibited all billboards, just as this ordinance prohibits *all* advertising and *all* frames. In holding the ordinance invalid the Supreme Court said: "The town trustees have undertaken to make criminal the maintenance of any billboard, however securely it may be built, and however unobjectionable may be the advertising matter displayed upon it. Such prohibition, involving a very substantial interference with the rights of property, can be justified, if at all, only to the extent that the subject matter of the legislation is embraced within the police power of the state. Bearing in mind that the ordinance does not purport to have any relation to the protection of passers-by from injury by reason of unsafe structures, to the diminution of hazard of fire, or to the prevention of immoral displays, we find that the one ground upon which the town council may be thought to have acted is that the appearance of billboards is, or may be, offensive to the sight of persons of refined taste. . . . We are not here, however, concerned with the extent to which the legislative power may, in the effort to protect the public safety or morals, regulate the manner of erecting or using billboards. The ordinance in question does not attempt such regulation, but undertakes to absolutely forbid the erection or maintenance of any billboard for advertising purposes. We have no doubt that this sweeping prohibition was beyond the power of the town trustees."

It is manifest from a reading of the ordinance alone that what the council did was to absolutely prohibit *all* frames and *all* advertising on the sides of street-cars, rather than to regulate dangerous frames, signs or devices and immoral or otherwise improper displays. And when the provisions of the ordinance are considered in the light of the evidence and findings it is all the more obvious that when the ordinance was passed no threat of public injury or danger existed (and none has developed since) which would warrant or justify the calling into play of an exercise of the police power in the broad and sweeping form which this ordinance takes.

■ Appellants contend that "the validity of a statute is not to be determined by what has been done in any particular instance, but what may be done under it," the argument being that if this judgment stands "the respondents might go far beyond what they have so far done." The answer to that is found in the Whitwell case, 98 Cal. 73, at 82 [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870, 873], where it is said: "Legislation of this character, which imposes an onerous burden of expense upon a lawful and highly meritorious business, cannot be justified by the mere possibility of the danger which it ostensibly seeks to avert. It must rest upon the fact that experience has demonstrated that such danger, in the absence of such legislative regulation, is one which may reasonably be anticipated as the probable result of conducting such business, notwithstanding the exercise of ordinary care to prevent it." See, also, in the same connection, *Varney & Green* v. *Williams, supra,* and particularly *In re Wilshire,* 103 Fed. 620.

Within the record in this case is found an illustration of what the city may do, and has done, by way of regulation. In elaborate detail, by Ordinance No. 2794 (New Series), the council has prescribed in various ways for the regulation of billboards and electrical and other advertising signs and devices. It has not prohibited these things on the theory that advertisers, uncurbed, might put up dangerous signs, and that, therefore, all signs and billboards should be banned, but it has prescribed just where the signs may go, how large they may be, at what distance from the sidewalk, building line or roof they may be anchored or fixed, and otherwise how they shall conform, all in the interest of the public security, health, morality, etc.

Much reliance is placed by the appellants upon the case of *Fifth Avenue Coach Co.* v. *City of New York,* 194 N. Y. 19 [16 Ann. Cas. 695, 21 L. R. A. (N. S.) 744, 86 N. E. 824], affirmed in 58 Misc. Rep. 401 [111 N. Y. Supp. 759], and 221 U. S. 467 [55 L. Ed. 815, 31 Sup. Ct. Rep. 709]. The ordinance there provides that "No advertising trucks, vans, or wagons shall be allowed in the streets of the Borough of Manhattan." The coach company used the sides of its automobile omnibuses for advertising signs, two of which were "13 feet by 2 feet 7 inches; another, 2 by 6½ feet; another, 4 by 2 feet; another, 8 feet by 20 inches; an-

other, 2 feet 4 inches square; and others, 2 feet in length.'' The advertisements were made up of ''painted figures of animals, men in oriental costume, busts of men and women, all made conspicuous by contrasted coloring.'' It clearly appeared that the signs covered ''the whole or a large part of the exterior'' of the stages and that the tendency would be to produce congestion upon streets already overburdened with traffic. The court in the Fifth Avenue Coach case held the stages of the coach company to be within the prohibition of the ordinance respecting ''advertising . . . wagons,'' and it is not difficult to understand this when it is borne in mind that practically the entire exterior of the stages was covered with gaudy signs designed to attract such attention from pedestrians as to block traffic. The findings in the case at bar show that here no such consequence was to be feared, and the admitted facts show the signs to occupy comparatively little space on the sides of the cars. We do not consider this case, or the other cases cited from outside jurisdictions, applicable to the case at bar, particularly in view of the settled law in California enunciated in the cases to which we have referred.

The second ground urged by the appellants is that the Transit Company has no power under its articles or franchises to engage in advertising business. The respondent Transit Company virtually conceded that under its original articles no such power was expressly given. Its amended articles, however, contain this power and authority in broad and ample terms. We are satisfied that although the amendment to the articles was made after the commencement of this suit, it is the state of things as of the time of trial, rather than at the commencement of the action, which should govern in a proceeding of this nature. (14 R. C. L. 308; *Parker* v. *Pacific Gas & E. Co.*, 50 Cal. App. 264 [195 Pac. 60].) But we are satisfied that appellants' contention that the making of an advertising contract is beyond, and not within, the corporate powers of the Transit Company, cannot be urged by them. The other party to the contract, the Advertising Company, is not only not raising the objection, but is litigating herein on the side of the Transit Company. We fail to see why the ordinary rule that ''The misuser of a franchise by exceeding the corporate powers is a cause of forfeiture which can be taken advantage of by the govern-

ment alone'' (7 Cal. Jur., p. 63, and cases there cited) does not apply here.

This brings us to the last contention of the appellants, namely, that advertising is not within the powers granted by the franchises which the Transit Company holds and enjoys. The point is without merit. It appears here that the practice of using street railway cars for advertising purposes is the common and usual practice—one recognized by the very ordinance in question here when it permitted advertising upon the inside portions of street-cars and upon the outside front and rear ends. Manifestly the franchise, which was silent on the matter of advertising, did not by mere silence contemplate a restriction upon the common and customary use of similar franchises under similar circumstances.

The judgment is affirmed.

Nourse, J., and Koford, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 8, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 5, 1929.