112 So.2d 398 (1959)
CITY OF DAYTONA BEACH, a municipal corporation, prganized and existing under the laws of the State of Florida, Appellant,
v.
Lafy ABDO, Appellee.
No. A-477.
District Court of Appeal of Florida. First District.
May 21, 1959.
Rehearing Denied June 16, 1959.
*399 Norton Josephson, Daytona Beach, for appellant.
Ossinsky & Krol, Daytona Beach, for appellee.
WIGGINTON, Judge.
This appeal is from a summary final decree declaring unconstitutional and void an ordinance of the City of Daytona Beach, and permanently enjoining enforcement of its provisions.
Appellee instituted this action by a complaint alleging that he is the owner of a motor court located on South Ridgewood Avenue in the City of Daytona Beach on the premises of which he maintains a sign or signs indicating the rates at which he is willing to offer tourist accommodations to the public. The complaint alleges that after the erection of such sign or signs the defendant City enacted an ordinance amending the Code of Ordinances by adding thereto an additional section which reads as follows:
"Section 1. That Article I of Chapter 3 of the Code of Ordinances of The City of Daytona Beach, Florida, be and the same is hereby amended by adding thereto section 3-25 to read as follows:
"`Sec. 3-25.
"`(a) It shall be unlawful to erect, install, display, paint or place any sign, sign board, billboard, banner, either painted, electrical or neon, advertising the rates of any hotel, apartment house, motel, apartment hotel, guest or rooming house in The City of Daytona Beach, Florida.
"`(b) It shall be unlawful to paint or stencil on any hotel, apartment house, motel, apartment-hotel, guest or rooming house in The City of Daytona Beach, Florida, any price, figure; or word designating the rental, price or cost of any room or apartment for any time whatsoever.
"`(c) It shall be unlawful to erect, install, maintain, display, paint or place any sign, sign board, billboard, banner, either painted, electrical or neon, advertising Lowest Rates, Very Low Rates, Special Rates, Seasonal Rates, Summer Rates, Low Rates, Free Accessories, Free Services, or any other phraseology referring to any special rates, charges, prices, etc., in connection with the rental of any hotel, apartment house, motel, apartment-hotel, guest or rooming house in the City of Daytona Beach, Florida.
"`(d) The provisions of this section shall not be interpreted to mean that any sign advertising any rates will be prohibited on the inside of any of the foregoing structures, so long as said sign is not designed to be visible from the outside of the structure.
"`(e) All non-conforming signs shall be removed or made to conform with the requirements of this section within six months after the effective date of this section of this article.'
"Section 2. That all Ordinances and parts of Ordinances in conflict herewith are hereby repealed.
"Section 3. That this Ordinance shall take effect a provided by law."
The complaint further alleges that Ridgewood Avenue on which plaintiff's motor court is located is devoted almost exclusively to tourist courts, motor courts and other accommodations catering to the transit tourist trade traveling on and along the highway; that due to the keen competition between the operators of the many motor courts in the city, business is slow during dull seasons, and that the posting of price signs attracts customers for plaintiff's *400 accommodations. It is further alleged that the action of the City in adopting the ordinance in question was arbitrary, unreasonable and discriminatory as violative of plaintiff's constitutional rights in that the object of the ordinance bears no relationship to the health, welfare, safety or morals of the community; denies plaintiff his freedom of speech in posting his prices for accommodations; interferes with free enterprise, and endeavors to make a monopoly out of a competitive business. The complaint prays for a decree adjudging the ordinance unconstitutional and void, and granting a permanent injunction restraining enforcement of its provisions.
The City's answer, among other things, alleges that the municipality is located in the center of the Halifax area of the county within which is located hotels, apartment houses and motels with accommodations for approximately 40,000 people; that the investment in tourist accommodations in the area would exceed $130,000,000; that the largest single source of revenue upon which the residents of the area depend for a livelihood is derived from the construction and operation of the mentioned tourist accommodations; that from these improvements the City derives a large proportion of its taxes. It is further alleged that the tourist accommodations located within the area have been constructed of the finest materials and with great artistic ability, as a result of which they are extremely attractive to the tourists who utilize them on extended visits to this state, many of whom become permanent residents and investors in the Halifax area. It is further alleged that in dull seasons of the year some of the more unscrupulous operators of tourist accommodations in the City engage in intensive price wars by displaying on their premises large outdoor signs on which they advertise accommodations for lower rates than is customarily charged for accommodations in the area; that the display of hundreds of such large signs advertising cut-rate prices for accommodations creates a depressing feeling in the minds of tourists passing through the City, giving the entire area a blighted and honky-tonk appearance, destroying the aesthetic beauty of the area, and discouraging passing motorists from stopping or visiting in the City. It is alleged that the condition created by the indiscriminate outdoor advertising of rates for tourist accommodations is having a ruinous effect upon the economy of the City and threatens the general welfare of its inhabitants. It was to prohibit the source of the evil which threatened the general welfare of the community that the ordinance in question was adopted.
In opposition to a motion filed by plaintiff for a summary final decree the City submitted an affidavit by the President of the Halifax Area Council, a non-profit corporation, composed of owners and operators of tourist accommodations and business associations in the Halifax area. The facts testified to by the affiant substantially support the allegations of the City's answer to the complaint. This affidavit further attests that the evils flowing from the unrestrained outdoor advertising of rates for tourist accommodations, under the circumstances prevalent within the City, will quickly destroy the reputation of the Halifax area as a vacation center and bring inestimable financial loss to the City and its residents. The affidavit further stresses the economic loss to nonadvertising operators of tourist accommodations resulting from the unrestricted advertising of cut-rates by other operators. Such result would not in itself form valid support for the exercise of police power by the City since its purpose would be to stifle free competition contrary to the spirit and concept of the free enterprise system that forms a part of our American way of life.
Upon consideration of the complaint, answer and affidavits submitted in opposition to plaintiff's motion, the chancellor entered a summary final decree finding that there was no genuine issue as to any material fact, and that plaintiff was entitled *401 to the relief prayed for in his complaint. The Court decreed that the ordinance in question was unconstitutional, void and of no force and effect, and thereupon permanently enjoined the City from carrying out or enforcing any of the terms, conditions or provisions thereof. It is from this decree that appeal is taken.
It seems to have been the primary thrust of plaintiff's position before the chancellor, and his position here, that since the ordinance in question is prohibitory as distinguished from regulatory in character, it violates his constitutional right to not be deprived of life, liberty or property without due process of law.[1] He agrees as did the chancellor, that the ordinance might be valid if it merely sought to regulate the size, type and composition of outdoor advertising signs. He successfully contended in the trial court, and contends here, that the absolute prohibition of outdoor advertising of rates for tourist accommodations bears no reasonable relationship to the general welfare of the community, and is therefore not the proper subject of regulation under the police power granted to the City in its charter. In support of this position appellee cites an early decision of our Supreme Court which held that an ordinance regulating the erection and construction of billboards could not be enforced in such manner as to deprive one of the legitimate use of his property merely because such use offends the aesthetic or refined taste of other persons in the community.[2] The court held that to do so would constitute the taking of property for a public use without compensation as prohibited by our constitution. The import of this decision is that regulatory ordinances which bear a reasonable relationship to the health, safety, welfare or morals of the community may be validly enacted in the exercise of the police power. It made clear, however, that aesthetic values to the community bear no reasonable relationship to its general welfare, and cannot support the validity of a regulatory ordinance based thereon.
The foregoing rule announced in the Anderson case was later receded from by our Supreme Court in a case involving the City of Miami Beach.[3] That case questioned the validity of a zoning ordinance which restricted the use of a certain section of the city to hotel and apartment sites, and prohibited the use of any property within the defined area for business purposes. It was contended that the character of the surrounding property had so changed that the continuance of the zoning restrictions bore no substantial relationship to public safety, welfare, morals or health of the community, and should therefore be voided.
In its opinion the Supreme Court recognized as fundamental that one may not be deprived of his property without due process of law, but nevertheless may be restricted in the use of it when that is necessary for the common good. In reaching its decision the court placed great emphasis upon the background of the City's action in enacting the zoning ordinance in question. The motive prompting the restrictive use of the property in question had as its basis the phenomenal growth of Miami Beach which in large part was due to "its attractiveness to those who would escape business cares, the rigors of northern winters and the ravages of disease. Situated on a narrow peninsula between the Atlantic Ocean and an arm of it known as Biscayne Bay, blessed with a warm climate and fanned by the southeast trades, it has become known as one of the earth's principal vacation places. A preponderant number of those who have lived there for long or short periods have come to play. It is not primarily a business or industrial center to which residence is incidental, but on the contrary it is principally *402 populated by those who seek pleasure or health, and business is secondary." It was held that if the character of the city as a resort, and the necessity to its well-being of its charm for the stranger are borne in mind; if the comparative importance of store and hotel are considered when the area allocated to the one strikes the district assigned to the other and a choice must be made, the former should give way to the latter. It was recognized in this decision that aesthetic considerations are particularly relevant to the community of Miami Beach because of its general character as a resort area. It was observed that it would be difficult to see how the success of Miami Beach could continue if its aesthetic appeal were ignored, because of the community is a distinct lure to winter travelers. In conclusion the court held that the limitation on the use of the property affected by the ordinance for hotel and apartment sites was a fair, just and reasonable contribution to the economic good, the prosperity, and the welfare of the whole community, and not so burdensome that it contravenes the organic inhibition against deprivation without due process. Thus Florida aligned itself with the State of Wisconsin as one of the first to recognize that aesthetic values bear a reasonable relationship to the general welfare of a community whose economy depended to a large extent upon preserving such values for the benefit of tourists and visitors to their locality, and as such constitutes a proper subject for exercise of the police power.
Appellant distinguishes the foregoing case from the one now considered by us on two principal grounds. He points out that the Ocean and Inland Company case the court was considering a zoning ordinance whose restrictive provisions were applicable only to a small and specifically defined area of Miami Beach. In contrast, the ordinance here attacked is not related to any zoning plan wherein the areas affected are specifically defined, but is applicable throughout the entire city. He contends that for this reason, if none other, the ordinance is discriminatory and therefore unconstitutional and void.
In a more recent opinion our Supreme Court considered a regulation of county wide application adopted by the Board of County Commissioners of Dade County restricting the size of outdoor signs to not more than forty square feet in area.[4] It was contended that the regulation was an arbitrary and unreasonable exercise of police power by the county because there was no relationship between the object of the regulation and the health, safety, morals or general welfare of the public. In recognizing that the size and dimensions of outdoor signs affect the aesthetic beauty of a community, the court held that such aesthetic considerations do bear a reasonable relationship to the general welfare of a community such as Miami whose economy depends to such a large extent upon attracting tourists to that area. In so holding, the court reaffirmed the rule first announced by it in the Ocean and Inland Company case mentioned above, and adhered to the principles stated therein.
The most recent decision of our Supreme Court on the question here involved is a case involving a resolution of county wide application adopted by the Board of County Commissioners of Dade County similar in provisions and terms with the ordinance here under attack.[5] This regulation had no relation to the zoning ordinances of the County. In addition to prohibiting outdoor signs advertising rates for tourist accommodations at hotels, apartment houses or motels, the regulations further provided that it shall not be interpreted to mean that any sign advertising any rate will be prohibited on the inside of any of the foregoing structures so long as the same is not visible from the outside of the structure. Suit was brought by an owner of a motel which alleged that the county had threatened *403 to arrest him if he did not remove a certain sign advertising rates for tourist accommodations which was located on the inside of his building. The suit asked for injunction to restrain the enforcement of the regulation on the ground that his sign did not violate the regulation, and furthermore the regulation itself was unconstitutional and void. Under the facts in that case it was held that the manner in which the sign was displayed did not violate the terms of the ordinance, and plaintiff was therefore entitled to the relief he asked. In reversing the order of the chancellor striking the regulation as being unconstitutional and void, the court commented that sixteen years ago it recognized the importance of a community such as Miami Beach of maintaining the attractiveness of the territory, citing the Ocean and Inland Company decision discussed above. It likewise called attention to the Merritt decision which commented upon the importance of aesthetic beauty to the territory west of Biscayne Bay, as well as to Miami Beach. The opinion states that the court readily sees the relevancy of those decisions to conditions which the resolutions in the Gould case were designed to meet, and could imagine the ugliness not to mention the confusion which might result if in a colony of motels each could unrestrained display signs of all sorts and sizes advertising rates. We construed the Gould decision to lay down the principle that it is a proper exercise of police power for a city to prohibit the display of outdoor signs advertising rates for tourist accommodations by hotels, motels or apartment houses in those communities or areas where the general welfare of its inhabitants depends in a substantial degree upon preserving the aesthetic appearance of the area as an attraction for tourists and other visitors.
On the basis of the authorities hereinabove cited and discussed, we must hold that the ordinance in question is not patently unconstitutional, and the chancellor was in error in so holding.
The answer of the City, and the affidavit submitted in opposition to plaintiff's motion for summary final decree, present genuine issues of material facts with respect to the substantial economic dependency of the community's general welfare upon the business of tourism which would be damaged if not destroyed in the event the aesthetic beauty of the area is threatened by the indiscriminate display of outdoor signs advertising rates for tourist accommodations. It is upon the establishment of these facts that the reasonable relationship of the object of the ordinance to the general welfare of the community will depend. The court should not and does not rule in this appeal on the validity of the challenged ordinance. We merely hold that it is not unconstitutional on its face. Like the chancellor, we are restricted in our consideration to what was properly before him at the hearing on the motion for a summary decree as shown in the record on appeal. In such consideration we say only that there existed a genuine issue as to a material fact, and that the moving party is not entitled to a summary decree as a matter of law.
We therefore hold that the chancellor erred in entering summary final decree in plaintiff's favor. The decree is therefore reversed and the cause remanded for further proceedings consistent with the views expressed herein.
CARROLL, DONALD, J., concurs, and STURGIS, C.J., dissents.
STURGIS, Chief Judge (dissenting).
I am convinced that the Supreme Court of Florida has not receded from Anderson v. Shackleford, 74 Fla. 36, 76 So. 343, 345, in which it considered an ordinance of Lake City prohibiting the use anywhere in the municipality of certain outdoor advertising media and defining such use as a public nuisance punishable by fine and/or imprisonment. After stating that it is a "fundamental and universal rule that any *404 ambiguity or doubt as to the extent of a power attempted to be exercised by a municipality out of the usual range, or which may affect the common-law right of a citizen or inhabitant, should be resolved against the municipality," and that a municipality "can exercise only such power as is granted to it in express terms * * or fairly implied in or incident to the powers expressly granted, or those that are indispensable to accomplish the objects and purposes of the corporation" (citing authorities), the court held:
"In so far as the city undertakes to regulate the erection or construction of billboards that might be dangerous to the public by falling or being blown down, or constructed of such material and in such manner as to endanger life or property, or to increase the danger of loss by fire, or to have printed or displayed upon them obscene characters and words tending to injure and offend public morals, it has the power; but to attempt to exercise the power depriving one of the legitimate use of his property merely because such use offends the aesthetic or refined taste of other persons is quite another thing, and cannot be exercised under the constitution, forbidding the taking of property for a public use without compensation."
That rule meets head-on and renders unconstitutional the ordinance in the case on appeal, which is designed to prohibit the specified use of property generally throughout the city. The ordinance under attack is distinguishable from zoning ordinances of the type now usually upheld and which are typically limited to only a part of the territory of the affected municipality, and the terms of which apply equally to the classes falling within the purview of such ordinances. When zoning ordinances depart from these essentials, courts have seen fit to inquire into and have held such ordinances inapplicable to particular parcels of property, but have not on that score struck down the ordinance proper.
The case relied on by the appellant are not squarely in point. In City of Miami Beach v. Ocean & Island Co., 147 Fla. 480, 3 So.2d 364, the ordinance sustained was a zoning ordinance that was limited in application to a particular area within the municipality. In Merritt v. Peters, Fla., 65 So.2d 861, an ordinance restricting the size of all commercial signs was held to be valid. The opinion in that case clearly indicates that the ruling was based on the fact that the ordinance was not confiscatory, that it was regulatory only, and that it was not directed to a particular class of citizens or kind of business.
The case of Dade County v. Gould, Fla., 99 So.2d 236, is distinguishable from the case on review in that the resolution there involved was adopted pursuant to Chapter 17833, Laws of Florida, Acts of 1937, which specifically enabled counties having a population in excess of 180,000 to regulate the use of lands and buildings for the purpose of "promoting health, safety, morals or the general welfare of the community." And while it may be fairly argued that the court inferentially sustained the constitutionality of the act and of the ordinance adopted under its authority, the emphasis of the decision centered on the proposition that "in the particular circumstances" enforcement of the ordinance against Gould should be enjoined. Moreover, counties are political subdivisions and an arm of the state, whereas municipalities are not. Thus the Gould case does not clearly cut the cloth of the problem with which we are confronted: whether the City of Daytona Beach is here exercising a power that is "indispensable to accomplish the objects and purposes of the corporation," as laid down in Anderson v. Shackleford, supra. I do not think such is the case.
Not only does the constitution protect the citizen against deprivation of property without due process of law and payment of just compensation, but it grants to him equal protection under the law. This court, as does the circuit court, takes judicial *405 notice of the fact that property within the territorial limits of the City of Daytona Beach is put to many uses other than innkeeping. It is difficult to understand how it is, on aesthetic grounds, that the grocer, baker, and candlestick maker, operating next door to the innkeeper, can be accorded the right to advertise their rates and prices according to any media of their choice, including each of the devices mentioned in the ordinance under attack, while the innkeeper is to be denied that right. In the face of the fact that there is no aesthetic distinction between the advertising of one as compared to the other, there is nothing to support the unequal effect of the ordinance. Competition is known to be the life of trade and the economic impact of those who voice their prices is not only healthy but essential to our system of government. If aesthetic values standing alone  and that is all that remains  are to constitute a basis for limiting the use of property, the limitation should apply alike to all. How can the public welfare profit by refusing the innkeeper the right to use his property in a sloppy, garish, and unsightly manner unless persons otherwise engaged are similarly restricted?
In my opinion the ordinance in question is invalid for the further reason that it has the effect of overriding F.S. § 509.201(2) (a), F.S.A. which provides the conditions under which innkeepers may engage in outdoor advertising of their rates.
My views are not to be interpreted as holding that the inherent police power of municipalities may not be validly exercised against misleading or false advertising. That subject is not before us. I also recognize that the legislature may enact general state statutes, based on reasonable classifications that are applicable over only a portion of the state; further, that the power of municipalities to zone limited area to particular uses may be exercised solely to protect aesthetic values.
It is the attempted exercise of such authority under an ordinance that on its face is arbitrary and discriminatory, as I find to be the case here, which in my opinion renders the ordinance unconstitutional. See People v. Osborne, 17 Cal. App.2d Supp. 771, 59 P.2d 1083; Pacific Rys. Advertising Co. v. City of Oakland, 98 Cal. App. 165, 276 P. 629; Varney & Green v. Williams, 155 Cal. 318, 100 P. 867, 21 L.R.A., N.S., 741. When all is said and done, it is evident that the real object of the ordinance in question is to restrict competition. Such purpose is not within the police power of the municipality. Ex parte Boehme 12 Cal. App.2d 424, 55 P.2d 559.
Finally, I submit that the question presented by this appeal is strictly and exclusively a question of law. I would not, therefore, remand the case for the taking of testimony and the resolving by the circuit court of whether the ordinance has a factual background  tourist economy, etc.  warranting its enactment. While the city's pleadings do appear to present such an issue, it is not a material issue, one that is recognizable in law. It is not competent for the courts to resolve the legality of legislative enactments on the basis of what the court may find to be facts warranting or not warranting the enactment, that being the exclusive prerogative of the legislative body. Neither can the courts resort to proofs dehors the official records of the legislative body to determine the effectiveness of the act. The ordinance in question must stand or fall on that which is contained within its four corners, aided only by matters of which courts take judicial notice.
Since the only "material fact" before the Chancellor and involved on this appeal is the question of the validity of the ordinance, and since that question is strictly one of law, I feel that the majority errs in holding that there existed a genuine issue of material fact that is capable of judicial determination by evidence dehors the ordinance itself. I also feel that the Chancellor correctly held the ordinance invalid.
For the reasons stated, I would affirm the order of the Chancellor granting summary judgment for the plaintiff below.
NOTES
[1] Florida Constitution, Declaration of Rights, § 12, F.S.A.
[2] Anderson v. Shackleford, 74 Fla. 36, 76 So. 343, L.R.A. 1918A, 139.
[3] City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364.
[4] Merritt v. Peters, Fla. 1953, 65 So.2d 861.
[5] Dade County v. Gould, Fla. 1957, 99 So.2d 236.