150 So.2d 254 (1962)
Milton ESKIND and Evelyn T. Eskind, his wife, et al., Appellants,
v.
CITY OF VERO BEACH, a municipal corporation organized and existing under the laws of the State of Florida, Appellee.
No. 2995.
District Court of Appeal of Florida. Second District.
November 23, 1962.
Rehearing Denied March 5, 1963.
*255 Darrell Fennell of John R. Gould Law Office, Robert Jackson, Vero Beach, for appellants.
James T. Vocelle; Vocelle & Vocelle, Charles A. Sullivan, Vero Beach, for appellee.
ALLEN, Judge.
Appellee, the City of Vero Beach, adopted an ordinance regulating advertising rates for motels, hotels, tourist homes and other types of lodging houses, which ordinance prohibits the use of outdoor signs in advertising rates for tourist accommodations.
Appellants, motel owners and plaintiffs below, seeking to be permitted to use outside signs advertising their lodging rates, brought suit for injunctive relief and a declaratory decree declaring said ordinance to be invalid. In conjunction therewith, they filed an application for an order temporarily enjoining the enforcement of the ordinance which they sought to have declared unconstitutional. The lower court entered an order denying the application for a temporary injunction and appellants filed an interlocutory appeal. This court, without opinion, affirmed the lower court's interlocutory order in Eskind v. City of Vero Beach, Fla.App. 1961, 130 So.2d 631, on the authority of City of Daytona Beach v. Abdo, Fla.App. 1959, 112 So.2d 398, cert. denied, Fla., 118 So.2d 540.
A hearing was then held at which considerable testimony and other evidence were adduced by both parties. The lower court rendered its final decree, here appealed, finding that the ordinance in question was a valid exercise of the police power of appellee city, and dismissed appellant's complaint. In its opinion incorporated in the decree the lower court held as follows:
"The Court [finds] from the evidence that the ordinance of the City of Vero Beach under attack herein bears a reasonable relation to the general welfare of the inhabitants of the City of Vero Beach and the community in general and is a valid exercise of the police power. City of Daytona Beach v. Abdo, Fla.App. 1959, 112 So.2d 398; Abdo v. City of Daytona Beach, Fla. 1960, 118 So.2d 540; Merritt v. Peters et al., Fla. 1953, 65 So.2d 861; and Viale v. Foley, 1960, 76 Nev. 149, 350 P.2d 721.
"In the case of City of Miami v. Kayfetz, Fla. 1957, 92 So.2d 798-801, the Court stated:
"`* * * courts should be very cautious in declaring a municipal ordinance unreasonable, there being a peculiar propriety in permitting the inhabitants of a City through its proper officials to determine what rules are necessary for their own local government. State ex rel. Harkow v. McCarthy, 1936, 126 Fla. 433, 171 So. 314, City of Tacoma v. Keisel, 1912, 68 Wash. 685, 124 P. 137, 40 L.R.A.,N.S., 757.
"`Where an ordinance is within the power of the municipality to enact it is presumed to be reasonable, unless its unreasonable character appears on its face. State ex rel. Harkow v. McCarthy, supra; State ex rel. McAuley v. York, 1925, 90 Fla. 625, 106 So. 418. And when the authority to enact the ordinance does fairly appear, wide latitude is allowed in its exercise, where *256 it does not appear that there has been, in action taken, an abuse of authority or a violation of organic or fundamental rights. State ex rel. Simpson v. Ackerly, 1915, 69 Fla. 23, 67 So. 232. If reasonable argument exists on the question of whether an ordinance is arbitrary or unreasonable, the legislative will must prevail. State ex rel. Skillman v. City of Miami, 1931, 101 Fla. 585, 134 So. 541.'"
In affirming the lower court, we have considered all of the questions raised but feel that the only one which merits discussion is whether or not the lower court had sufficient evidence before it to justify its finding that the ordinance involved bears a reasonable relation to the general welfare of the inhabitants of Vero Beach and the community in general so as to constitute a valid exercise of that city's police power.
Pertinent provisions of the sign ordinance read as follows:
"WHEREAS, in order to develop and maintain the orderly growth of the area and to promote the general welfare, it is urgent that effective legislation be passed to secure the position of the area as a clean, healthful, orderly and beautiful area; and
"WHEREAS, the unrestricted use of sign advertising and the evils resulting therefrom have caused many persons to sell property at below the accepted property value and further restricts the flow of mortgage money into the area to further and promote its development; and
"WHEREAS, if unrestricted sign advertisements continue the resulting use of said advertisement by the tourist accommodations industry will give the entire area the appearance of a distressed area, and present conditions of a most unsightly, cluttered, and distracting appearance to all motorists, tourists and natives alike; and now, therefore,
"THE COUNCIL OF THE CITY OF VERO BEACH HEREBY ORDAINS:
"It shall be unlawful to erect, install, maintain, display, paint, stencil or place any sign, signboard, billboard, banner, either painted, electrical, or neon, advertising or designating by word or figure, the rental rates, prices, rate of cost of any room or apartment for any time whatsoever, to include advertising LOWEST RATES, VERY LOW RATES, SPECIAL RATES, SEASONAL RATES, SUMMER RATES, DISCOUNTS, LOW RATES, FREE or any other phraseology referring to any special rates, charges, prices, etc., in connection with the rentals, accessories and/or services of any hotel, apartment house, motel or residence in the City of Vero Beach. This shall not be interpreted to mean on the inside of any of the foregoing structures so long as the same is not visible from the outside of the structure."
Thus it is seen that the passage of the ordinance was prompted by both economic and aesthetic considerations. There was proof that tourism, the only industry directly affected by the sign ordinance, brings in roughly ten million dollars annually to the greater Vero Beach area and that it is second only to citrus as an income producer in Indian River County.
In defense of the sign ordinance there was considerable testimony that prolonged use of price signs would result in a price war which in turn would have an adverse effect on the tourist industry and hence a slowing down of the economic momentum of the community in general. There was testimony that one such price war had put one lodging accommodation establishment out of business. In addition, there was also testimony that price signs depressed the real estate market relating to the sale or exchange of motels. It was established that prospective purchasers would not be, in effect, interested in buying into a price war.
*257 As noted before, the sign ordinance shows on its face that it is dedicated to the dual purpose of both the economic and aesthetic uplift of the tourist industry and the community. This court realizes that any attempt to segregate the aesthetic and economic considerations from each other would, under the facts of this case, be largely superficial since they are fairly closely interwoven with one another. Such interaction is demonstrated by testimony which was adduced and by the language of the ordinance itself relative to motel price signs being unsightly as well as creating an appearance of a distressed area.
Insofar as motel price signs are concerned, it is not to the aesthetic senses of the inhabitants of Vero Beach that the sign ordinance caters but rather to that of tourists who it is hoped will purchase lodging accommodations or will vacation at the various tourist lodging and vacation establishments to be found in the city. If motel price signs create a honky-tonk atmosphere that operates to drive tourists away from Vero Beach motels, then the adverse effect on the city itself is economic. Appellants ask why should motel price signs be deemed offensive to aesthetic tastes when, for instance, gasoline and liquor price signs located in the vicinity of the motels are not? It seems within the realm of probability, however, that the purchaser of lodging would be more concerned with the general appearance, at point of sale, of the surroundings of the product he buys than would the purchaser of liquor or gasoline.
Summarizing the evidence and inferences to be drawn therefrom to this point, it was shown that the tourist industry had suffered direct economic hardship from price warring resulting from price signs. It was further shown that the economy of the industry would suffer indirectly from price signs to the extent that their unsightliness and tendency to create the appearance of a distressed area would operate to drive the tourist dollar elsewhere. Insofar as price warring alone is concerned, there was direct, uncontradicted testimony that the existence of motel price signs caused some tourists, who made price inquiries at motels not displaying such signs, to depart from the community entirely without stopping over at all.
In short, there is sufficient competent testimony and other evidence, though in many instances contradicted, appearing in the record to justify the chancellor's conclusion that the sign ordinance under attack bears a reasonable relation to the economic health of a major industry in the City of Vero Beach and hence to the general welfare of said city's inhabitants and the community in general.
In City of Miami v. Kayfetz, supra, cited by the chancellor, the test to be applied to ordinances enacted under the police power was stated as follows at 92 So.2d 801:
"In considering whether or not the ordinance now before us is reasonable, the test is not whether we think it a wise measure or the best means of approaching a problem, but rather whether it has a rational relation to the public health, morals, safety or general welfare and is reasonably designed to correct a condition adversely affecting the public good. And the test must be applied in view of the character or nature of the condition to be remedied and all circumstances relating thereto."
It has been held that police power ordinances may be enacted solely in the interest of the general welfare of the inhabitants of a community, and further, that aesthetics can be of sufficient concern to the people of a community so as to affect their general welfare. City of Miami Beach v. Ocean & Inland Co., 1941, 147 Fla. 480, 3 So.2d 364; Merritt v. Peters, supra; Sunad, Inc. v. City of Sarasota, Fla. 1960, 122 So.2d 611; Dade County v. Gould, Fla. 1957, 99 So.2d 236.
It is our view that appellants and other motel operators in Vero Beach who *258 desire to openly advertise their room rates have, under the ordinance here challenged, been accorded substantive due process, the test of which we outlined in our recent opinion written in the case of City Commission of Fort Pierce v. State, Fla.App. 1962, 143 So.2d 879, appearing at p. 888 as follows:
"* * * In any case where legislation invoking the police power is enacted, the deprivations and infringement of rights and preferences resulting to the individual must stand the test of substantive due process. Such legislation cannot be arbitrary or oppressive and the laudable objectives in the public interest should be such as to justify the transgression on individual rights and interests. Further, the means contrived to achieve these objectives must reasonably appear to accomplish them. Assuming legislation to be in the public interest, when it runs counter to the interest of the individual, that of the individual must give way absent a determination that the individual is being arbitrarily or unreasonably imposed upon. * * *"
We are further persuaded that the sign ordinance here involved is, on its face, sustainable under the authority of City of Daytona Beach v. Abdo, supra, relied on by the lower court and by this court in disposing of the interlocutory appeal previously filed in this cause.
In conclusion, the language of the sign ordinance itself, in conjunction with the evidence adduced below and on which the chancellor, as trier of fact, was entitled to rely, persuades us to sustain his holding that said ordinance bears a significant relationship to the general welfare of the inhabitants of Vero Beach and appears to be reasonably calculated to contribute thereto.
Affirmed.
SHANNON, C.J., and SMITH, D.R., Associate Judge, concur.