147 So.2d 598 (1962)
Lafy ABDO, Appellant,
v.
CITY OF DAYTONA BEACH, a Municipal Corporation Organized and Existing under the Laws of the State of Florida, Appellee.
No. D-333.
District Court of Appeal of Florida. First District.
December 18, 1962.
Rehearing Denied January 3, 1963.
*599 Ossinsky & Krol, Daytona Beach, for appellant.
Norton Josephson, Daytona Beach, for appellee.
STURGIS, Judge.
The appellant owner of a motel business in Daytona Beach, Florida, plaintiff below, appeals from a final decree dismissing his complaint seeking to enjoin the defendant City of Daytona Beach from enforcing an ordinance prohibiting the use of outdoor signs in advertising rates for accommodations in motels, hotels, tourist homes, and other types of lodging houses;[1] and also appeals from a post-decretal order overruling his objections to the City's motion for taxation of costs and entering judgment for costs. In view of our conclusions it is unnecessary to specially discuss the post-decretal order.
This is the third appearance of this case before the appellate courts. On the first appeal[2] we reversed a summary final decree in favor of plaintiff and remanded the cause for the taking of testimony and entry of appropriate decree. On certiorari to the Florida Supreme Court the writ was discharged as premature.[3] Reference is had to *600 the reported cases for a statement of the pleadings and issues in the trial court. Our discussion will assume that the reader is familiar therewith.
On the first appeal this court concluded that the Florida Supreme Court, by its holdings in City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364, Merritt v. Peters (Fla.), 65 So.2d 861, and Dade County v. Gould (Fla.), 99 So.2d 236, receded from its holding in Anderson v. Shackelford, 74 Fla. 36, 76 So. 343, L.R.A. 1918A, 139; and on that premise we held that the answer of the defendant city which asserted economic dependency of the community upon tourism and a resulting damage to tourism, hence to the community, by the indiscriminate display of signs, presented genuine issues of relevant fact upon which would be determined the true relationship to the general welfare of the restrictions set up by the ordinance. In disposing of a petition of the plaintiff for certiorari to review that decision on the ground that it conflicted with previous decisions of the Florida Supreme Court, that court held that it would be premature to undertake to pass on any possible conflict in the decisions until it was determined from the evidence to be taken in the case whether or not the subject property is so situated as to justify interference with the ownership in order to preserve the aesthetics of the community. Thereafter the proofs were presented before the chancellor who found as matters of fact: (1) that the city of Daytona Beach is one of the prime tourist attractions of the state; (2) that the main source of income of its citizens is the tourist industry; (3) that the indiscriminate display of price signs by motel, hotel, apartment house, apartment-hotel, guest and rooming house owners creates a depressing, cheapening, and bargain basement appearance on a street-peddling basis; (4) that the aesthetics of the city have been depreciated and adversely affected by the display of outdoor rate signs; and (5) that it is essential to the general welfare of the citizens of the city of Daytona Beach that the aesthetics of the city be restored, improved, and maintained. Based on said findings, the decree appealed adjudged and decreed that the complaint be dismissed with prejudice.
The critical question of law for determination is whether the evidence supports the conclusion, inherent in the decree appealed, that the ordinance in question is a proper exercise of the police power vested in the city.
It is undisputed that for over twelve years plaintiff has owned and operated a motel located on a main thoroughfare in the city of Daytona Beach. He caters primarily to the motoring public and during that period has at all times maintained outside the structures on the premises a sign displaying the nature and prices of the accommodations at that location, the purpose being to attract business from the traveling public. The use of such signs by motels in said city has been an accepted business practice for many years. On one side of plaintiff's motel is located a filling station and on the other a restaurant, both of which display exterior signs advertising the prices of their wares and designed to attract the motoring public. Many business establishments other than motels are located on the same thoroughfare and many have price signs located on the outside of the establishment or designed to be seen from the outside. This practice is common in retail establishments throughout the city.
Local motel owners appearing as witnesses for the plaintiff testified that such signs were necessary to the operation of their businesses and the economic dependence thereon. Certain witnesses for plaintiff testified that as tourists they kept alert for such signs. The city produced witnesses who testified that as tourists they tend to avoid motels displaying such signs, but on cross-examination admitted that they were not induced by aesthetic considerations, but rather because if the prices shown were lower than they thought reasonable on the current market, their reaction was *601 that something was wrong with the motel involved. We take judicial notice of the fact that the content of a motel price sign does not in itself involve a problem in aesthetics.
The testimony on which the defendant city relies may be summarized as follows: One witness testified that Daytona Beach ranks second in the number of tourists attracted to this state; that in his opinion price signs cheapen the appearance of the area and destroy the aesthetic values of the area; that in his opinion tourist attractions in Daytona Beach are superior to those of Sarasota [the relevancy is not shown]; and that in his belief the numerous price signs, even if aesthetically proper, will give an area a "hard times" appearance. Another witness for the city testified that price signs add to the clutter of signs and that the additional clutter created by such signs adversely affects the economy of the area; that the cumulative effect of a large number of signs has a detrimental effect on the aesthetics of the area. Another testified that tourism is the city's prime industry, that the economy of the area is dependent thereon, and that he did not believe motel price signs add anything to bringing people to the Daytona Beach area. Another testified that price competition between motel operators results in reduced income, causing them to have less money to maintain their establishments and their property to become run down, that price signs are unaesthetic and adversely affect the economy of the area, and that the tourist industry constitutes more than half of the city's economy.
One of plaintiff's witnesses admitted on cross-examination that the area involved would be improved aesthetically if there were less signs displayed and that certain signs in existence did not help the area aesthetically.
The ordinance in suit does not purport to regulate the size, location, construction, or other attributes of all signs relating to price as displayed by all businesses in the city of Daytona Beach. Its application is limited to persons engaged in "rentals of any hotel, apartment house, motel, apartment-hotel, guest or rooming house in The City of Daytona Beach, Florida." We feel that in construing it we are to be governed by the decision of the Florida Supreme Court in Sunad, Inc. v. City of Sarasota (Fla.), 122 So.2d 611, decided June 8, 1960, which is subsequent to the decision of this court rendered May 21, 1959, in City of Daytona Beach v. Abdo, 112 So.2d 398.
In Sunad, Inc., the Florida Supreme Court was squarely confronted with a decision of the Second District Court of Appeal purporting to follow the decisions of the Florida Supreme Court in City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364, and later related decisions, and with the apparent conflict of those decisions with the former decision of the Florida Supreme Court in Anderson v. Shackelford, 74 Fla. 36, 76 So. 343, L.R.A. 1918A, 139. This is the identical problem which had been presented to the Supreme Court by the petition for writ of certiorari to review our former decision in the instant case (City of Daytona Beach v. Abdo, supra), which petition the Supreme Court rejected as premature (Abdo v. City of Daytona Beach, 118 So.2d 540, decided March 2, 1960).
In Sunad, the City of Sarasota enacted an ordinance limiting the size of signs in business and industrial districts and placed them in two classifications denominated "point of sale" and "non-point of sale". In the first class wall signs were unlimited in size. In the second class wall signs were limited to 300 square feet and all other signs to 180 square feet. The Circuit Court held the ordinance discriminatory and unreasonable on the theory that there could be found no reason to single out one type of sign to make all the sacrifices while other types could be of almost unlimited size, that one owner should not be permitted to maintain a sign of unlimited size while another would be restricted to a size much smaller. The Second District Court of Appeal reversed *602 the trial court and on certiorari to the Supreme Court the decision of reversal was quashed. In directing the District Court to enter judgment consonant with that of the trial court, Mr. Chief Justice Thomas, speaking for the justices of the Supreme Court, said:
"It should be noted * * * that the chancery court concluded that the City of Sarasota was of the same character as the City of Miami Beach; that it was a center of culture and beauty and, therefore, that aesthetics was a factor properly to be considered. The district court of appeal likewise opined that there was abundant evidence to support the view that the respondent was entitled to take into account the beauty of the community in exercising its police powers.
"In substance, then, the chancery court and the district court of appeal concurred in the thought that aesthetic considerations could be just cause for regulating signs in Sarasota inasmuch as the city was of the same character as Miami Beach, to which we applied the rule in the Ocean & Inland case. We agree with them and re-announce what was written in that respect in the Ocean & Inland case and related cases, Merritt v. Peters, Fla., 65 So.2d 861, International Company, Inc. v. City of Miami Beach, Fla., 90 So.2d 906, Dade County v. Gould, Fla., 99 So.2d 236, notwithstanding the gratuitous expression in the Anderson case.
"This controversy devolves, then, into the question whether or not the ordinance operates to put the petitioner out of business, or so to cripple its business, as to amount to an unreasonable and discriminatory invasion of its rights, hence an exercise of the police power which aesthetics do not warrant. Bearing in mind that aesthetics is the criterion by which the merits of the ordinance should be judged, we find insurmountable difficulty to a decision that a wall sign 300 square feet in size at non-point of sale would not offend while a sign of the same size on one of petitioner's billboards would, or that an unrestricted wall sign, at point of sale, would be inoffensive but one of petitioner's signs would shock refined senses, or for that matter, that a roof, ground, or other sign could be only 180 square feet while a wall sign would be at least 300 square feet and, if at point of sale, unlimited. * * *
"We reiterate what was written in the Ocean & Inland case and allied cases about regard for aesthetics being proper in situations such as were discussed there, and we recognize the conflict between those pronouncements and the flat declaration in the Anderson case. This means that we recede from so much of the opinion in the Anderson case as is inharmonious with our later expressions.

"We agree that the City of Sarasota is reasonably placed in the same category as Miami Beach so far as its appeal on the ground of attractiveness is concerned. But we do not concur in the view that the ordinance under attack defines a pattern calculated to protect and preserve the city's beauty. It is, in our opinion, unreasonable and discriminatory and for those reasons invalid." (Emphasis supplied.)
Our attention is invited to the decision of the District Court of Appeal of Florida, Second District, 150 So.2d 254, in case bearing serial number 2995 of that court, wherein Eskind et al. are appellants and City of Vero Beach, Florida, is appellee, which decision will not become final until the time for filing of petition for rehearing has expired and if filed, disposed of. The factual background of that case and the issues on the appeal strikingly parallel those in the case presently on review. Assuming, therefore, that the decision in Eskind becomes final and that there exists no overriding precedent, this court would be constrained *603 to adhere thereto in obedience to the rule of stare decisis. But we are directly confronted with the fact that the decision in Eskind, which is squarely bottomed on the decision of this court in City of Daytona Beach v. Abdo, supra,  the first appeal involving the case now on review  makes no reference to and presumably treats as not in point the intervening decision of the Florida Supreme Court in Sunad, Inc., v. City of Sarasota, supra, whereas this court feels obliged on principle, as well as under the rule of stare decisis, to follow our interpretation of the decision in Sunad, Inc.
The ordinance under attack on this appeal fails to define a pattern calculated to protect and preserve the beauty of the defendant city. It is so unreasonable and discriminatory as not to be a proper exercise of the police power. Paraphrasing the quoted expression of our Supreme Court in the Sunad case, we find insurmountable difficulty in attempting to equate the proposition that a sign advertising the price of gasoline, potatoes, or some other commodity, in such a way as to attract the attention of a motorist traveling on a highway to the establishment where the product is sold would be aesthetically inoffensive, but that a sign on that same highway and in the same general vicinity advertising the price of plaintiff's accommodations in his motel located thereon would shock refined senses or work a destruction of aesthetic values. The question arises as to what aesthetic and therefore legal distinction exists between a sign advertising motel rates, as prohibited by the ordinance here involved, and one which advertises, for example, swimming pool privileges, or free continental breakfast, or television in each room, etc., etc., which would be altogether permissible under the ordinance. For aught that appears, compliance with the ordinance could be effected by the unaesthetic expedient of throwing a bucket of paint over that part of the sign having to do with rates.
The fact is that the credible evidence in this cause and the conclusions thereon as stated by the chancellor reflect that the sole basis for invocation of the police power in the manner provided by the ordinance rests on economic impact of the subject signs rather than upon any aesthetic consideration. When economic impact standing alone becomes a sufficient basis for such discriminatory legislation it will mark the extinction of the last vestige of the economic system under which this government operates.
The decree appealed must be and it is reversed and remanded for proceedings consistent herewith.
Reversed.
CARROLL, DONALD K., C.J., and RAWLS, J., concur.
NOTES
[1] Ordinance No. 58-22 of the City of Daytona Beach provides:

Section 1. That Article I of Chapter 3 of the Code of Ordinances of the City of Daytona Beach, Florida, be and the same is hereby amended by adding thereto section 3-25 to read as follows:
"Sec. 3.25.
"(a) It shall be unlawful to erect, install, display, paint or place any sign, sign board, billboard, banner, either painted, electrical or neon, advertising the rates of any hotel, apartment house, motel, apartment-hotel, guest or rooming house in The City of Daytona Beach, Florida.
"(b) It shall be unlawful to paint or stencil on any hotel, apartment house, motel, apartment-hotel, guest or rooming house in The City of Daytona Beach, Florida, any price, figure, or word designating the rental, price or cost of any room or apartment for any time whatsoever.
"(c) It shall be unlawful to erect, install, maintain, display, paint or place any sign, sign board, billboard, banner, either painted, electrical or neon, advertising LOWEST RATES, VERY LOW RATES, SPECIAL RATES, SEASONAL RATES, SUMMER RATES, LOW RATES, FREE ACCESSORIES, FREE SERVICES, or any other phraseology referring to any special rates, charges, prices, etc., in connection with the rentals of any hotel, apartment house, motel, apartment-hotel, guest or rooming house in The City of Daytona Beach, Florida.
"(d) The provisions of this section shall not be interpreted to mean that any sign advertising any rates will be prohibited on the inside of the foregoing structures, so long as said sign is not designed to be visible from the outside of the structure.
"(e) All non-conforming signs shall be removed or made to conform with the requirements of this section within six months after the effective date of this section of this article."
Section 2. That all Ordinances and parts of Ordinances in conflict herewith are hereby repealed.
Section 3. That this Ordinance shall take effect a provided by law.
[2] City of Daytona Beach v. Abdo (Fla. App.), 112 So.2d 398, decided May 21, 1959.
[3] Abdo v. City of Daytona Beach (Fla.), 118 So.2d 540, decided March 2, 1960.